# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-KA-00648-SCT

*NILES MAXEY PETERSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/22/92 |
| TRIAL JUDGE: | HON. CLARENCE E. MORGAN, JR. |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | J. NILES MCNEEL |
| | DAVID E. BANE, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT S. FLYNN |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART - 2/22/96 |
| MOTION FOR REHEARING FILED: | 3/6/96 |
| MANDATE ISSUED: | 4/25/96 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The matter before the court involves an appeal from a conviction of rape and sexual battery on a two count indictment. Peterson received a sentence of twenty years for each count to be served concurrently. We reject most claims of error assigned by the appellant and affirm the trial court's ruling as to the rape conviction of the defendant. We conclude, however, that the indictment which charged the defendant for sexual battery was insufficient under Rule 2.05 of the Uniform Criminal Rules of Circuit Court Practice and this Court's line of jurisprudence and reverse that conviction.

**I.**

¶2. On September 1, 1991, Wendy Wright and a friend Christy Hitt were riding around Louisville in Wright's car when they happened upon the defendant Niles Peterson in the parking lot of Walmart. Wright

and Peterson were both eighteen at this time. Having decided to go to the house of a mutual friend, Mike Quinn, Wright and Hitt followed Peterson to Quinn's home. Soon thereafter, Quinn joined the group, and the four of them went to Cooper's, a local convenience store, to park Wright's car.

¶3. After leaving Wright's car at Cooper's the group went riding around town, stopping at various points to smoke marijuana, drink alcohol and sniff the gas from the aerosol cans of whipped cream they had bought from the store. It is disputed as to who was smoking the marijuana, drinking the alcohol, or sniffing the gas from the cans of whipped cream. Throughout the evening, Wright and Peterson had encounters involving kissing and grabbing where it remains in dispute whether consent was given. The group eventually returned to Quinn's home and ate sandwiches later that evening.

¶4. Around 1:00 a.m., Wright decided to leave Quinn's home. Peterson agreed to give her a ride to her car at Cooper's. Wright testified that when they arrived at her car, Peterson proceeded to let her seat back, crawl on top of her, and lift her shirt out of her pants. Wright testified that after this incident she grabbed her purse and got out of the car. While Wright walked toward the back of the car Peterson was driving, Peterson began to push her toward the building. After pushing her toward the building, Wright testified that Peterson picked her up and slammed her on the ground. After screaming and begging him not to hurt her, Peterson allegedly ordered her to lay down or he would "knock the hell out of ... [her]."

¶5. Wright testified that she initially refused to lay down, and as a result he hit her and knocked her down. The two continued to struggle and Peterson struck her again. Wright testified that Peterson ripped her clothes off and threatened to slice her throat with a knife. Fearing for her life, Wright testified that she ceased struggling and Peterson began to rape her. She testified in brutal detail that she was raped and forced to perform oral sex four times before she was able to escape. While running away wearing no more than her socks and a blouse with all the buttons ripped off, she fell down several times and jumped a ditch. She further testified that she eventually stopped at a house down the road from Cooper's and knocked on the door for help.

¶6. Peterson disagrees with Wright's testimony. Peterson testified that when the two of them arrived at Cooper's, they began kissing and fondling in the car until it became too small and crowded. Peterson stated that they then got out of the car and went over to the building and had consensual sex. He testified that they consensually had sexual relations once, and she consensually performed oral sex upon him. He also testified that they had not finished when she told him to "[h]old on" and ran toward Mike Quinn's home.

¶7. Peterson was indicted by a grand jury in Winston County, Mississippi, during the October term of 1991 on two counts. The first count was for the rape of Wendy Wright, a female human being above the age of fourteen years without her consent in violation of the provisions of Miss.Code Annotated 1972 § 97-3-65(2), as amended. The second count was for sexual battery consisting of the unlawful engagement in sexual penetration with Wright, a female human being above the age of fourteen years, by placing his penis into her mouth, constituting the act of fellatio, in violation of Miss.Code Annotated 1972 § 97-3-95 through § 97-3-103 (Supp.1991).

¶8. The defense made several pre-trial motions concerning issues raised before this Court. The defense filed a demurrer to Count II of the indictment on the grounds that the indictment did not state that the sexual penetration occurred "without her consent" as required by *Miss.Code Ann.* § 97-3-95 (1972). After hearing arguments from both parties on this issue, the trial court overruled the demurrer based on this Court's ruling in *Hines v. State,* 472 So.2d 386 (Miss.1985).

¶9. The defense also stated that he intended to question Wright about a previous instance where Wright and the defendant were kissing as evidence of past behavior going to the defense of consent. The trial court ruled that the evidence of kissing and fondling was in fact "part of sexual behavior ... and part of a sexual relationship." However, he sustained the prosecution's motion in limine to preclude admission of the evidence based on Rule 412 of the Mississippi Rules of Evidence.

¶10. The third motion by the defense included an attempt to introduce evidence concerning an incident where Wright was called "a slut and a whore" during an argument with another female. The evidence was offered as relevant to Peterson's state of mind on the night of the offense. The trial court denied the defendant's motion based on irrelevance.

¶11. The defendant's fourth motion concerned a proffer of testimony by one Todd Vowell that Wright had told him on a date that she had been raped by a previous boyfriend in Philadelphia some time before moving to Louisville. The defense asserted that this evidence contradicts Wright's previous testimony during a preliminary hearing that she had never charged anyone or made allegations against anyone that she had been the victim of rape or sexual advances. Vowell's testimony was offered as relevant to prove that Wright had made a false allegation of a past sexual offense under Rule 412(b)2(C). The trial court again denied the defendant's motion based on its irrelevance.

¶12. After the jury selection process concluded, the trial court heard testimony from Vowell in chambers. Upon hearing this testimony, the trial court renewed its ruling sustaining the prosecution's motion in limine precluding the admission of Vowell's testimony. During the trial proceedings, the prosecution elicited testimony from Wright's mother concerning the emotional trauma and behavior of Wright after the alleged offense. After the direct examination of Wright's mother, the defense, in a hearing in chambers, again renewed its motion to introduce testimony of Todd Vowell concerning allegations of the previous sexual offense, as evidence of an alternative source of injury under Rule 412(b)2(A). The trial court again denied the defendant's motion based on the irrelevance of Vowell's testimony.

¶13. After the presentation of each party's case, the trial court informed the opposing counsel of the proposed jury instructions in a hearing in chambers. The defense objected to numerous jury instructions, including jury instruction S-7, which explained the defense of intoxication. In spite of this objection, the trial court gave the instruction. After deliberation, the jury found the defendant guilty of one count of rape and one count of sexual battery. The trial court then sentenced Peterson to twenty years in prison for each count, to be served concurrently. Peterson now appeals to this Court to consider the following issues:

> **A) WHETHER THE TRIAL COURT ERRED IN DENYING PETERSON'S MOTION TO DEMUR TO COUNT II OF THE INDICTMENT CONCERNING THE SEXUAL BATTERY CHARGE;**

> **B) WHETHER THE TRIAL COURT ERRED IN DENYING PETERSON'S REQUEST TO INTRODUCE EVIDENCE OF A PRIOR INCIDENT OF KISSING BETWEEN THE ALLEGED VICTIM, WENDY WRIGHT, AND PETERSON;**

> **C) WHETHER THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S ATTEMPT TO INTRODUCE A STATEMENT BY WRIGHT INFORMING PETERSON THAT SHE HAD BEEN CALLED A "SLUT AND A WHORE;"**

**D) WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING THE INTRODUCTION OF EVIDENCE THAT ON A PREVIOUS OCCASION WRIGHT MADE AN ALLEGATION OF A PAST SEXUAL OFFENSE;**

**E) WHETHER THE TRIAL COURT ERRED IN ALLOWING WRIGHT'S MOTHER TO TESTIFY CONCERNING THE "EMOTIONAL OR PSYCHOLOGICAL TRAUMA" ENDURED BY WRIGHT WITHOUT ALLOWING VOWELL'S TESTIMONY AS PROOF OF AN ALTERNATIVE SOURCE OF INJURY; AND**

**F) WHETHER THE TRIAL COURT ERRED IN GIVING INSTRUCTION S-7 BECAUSE INTOXICATION OF THE DEFENDANT WAS NOT AN ISSUE OR AN ALLEGED DEFENSE IN THE INSTANT CASE.**

## II.

### a.

¶14. Section 97-3-95, Mississippi Code 1972 Annotated (as amended) provides, in pertinent part, that a person is guilty of sexual battery if he or she engages in sexual penetration with another person without his or her consent. Peterson asserts that consent is a necessary element of the offense of sexual battery in this case; thus, the indictment on count two, sexual battery is insufficient because it lacked the words "without her consent."

¶15. It is a well-settled principle that the Supreme Court is the "ultimate expositor of the law of this state." *UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc.,* 525 So.2d 746, 754 (Miss.1987). Therefore, this Court conducts de novo review on questions of law. *Id.; Tucker v. Hinds County,* 558 So.2d 869, 872 (Miss.1990). The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this court.

¶16. The indictment on count two states:

> That Niles Maxey Peterson, late of Winston County, Mississippi, on or about September 1, 1991, in Winston County, Mississippi, and within the jurisdiction of this Court, did wilfully, unlawfully, knowingly, intentionally, and feloniously engage in sexual penetration with Wendy G. Wright, a female human being above the age of fourteen (14) years, by then and there placing his penis into her mouth, the same constituting the act of fellatio, in violation of MCA § 97-3-103 (Supp.1991), and against the peace and dignity of the State of Mississippi.

(R. 3). Peterson contends that the trial court erred in not sustaining his motion to demur/dismiss the count of sexual battery for lack of a sufficient indictment. Citing this Court's holding in *Hines v. State,* 472 So.2d 386 (Miss.1985), the trial court determined that the indictment charged the accused of sexual battery with such force that "his demurrer will be unavailing."

¶17. It is a well-established principle of law that in order for an indictment to be sufficient, it must contain the essential elements of the crime charged. *May v. State,* 209 Miss. 579, 584, 47 So.2d 887 (Miss.1950) (where this Court held that it was essential to the sufficiency of the affidavit that it allege not only the sale of beer, but that beer was not permitted to be sold in the in county in which the sale occurred); *Love v. State,* 211 Miss. 606, 611, 52 So.2d 470, 472 (Miss.1951) (where an indictment charging the defendant with

"indecent assault upon or violation of the person of a female child under the age of thirteen years" was held to be insufficient because it failed to allege that the defendant was a "male person above the age of eighteen years"); *Everett v. State,* 248 So.2d 439, 441 (Miss.1971) (where an indictment which failed to allege the essential fact that false pretense was the primary cause by which money was obtained was held to be insufficient to charge the defendant with the completed crime of obtaining money by false pretenses, but was sufficient to charge the defendant with attempt to obtain money by false pretenses); *Watson v. State,* 291 So.2d 741, 743 (Miss.1974) (where an indictment charging an alleged prior felon with carrying a concealed weapon was held to be insufficient and fatally defective because it failed to allege with specificity the previous felony conviction of the defendant); *Stinson v. State,* 443 So.2d 869, 873 (Miss.1983) (where an indictment which charged the defendant with attempting to escape from "the Mississippi Department of Corrections" was held to be insufficient because it failed to charge an escape from "prison").

¶18. In *Love,* this Court set forth the requirements for the sufficiency of an indictment. This Court stated:

> [i]t is fundamental ... that an indictment, to be effective as such, must set forth the constituent elements of a criminal offense; *if the facts alleged do not constitute such an offense within the terms and meaning of the law or laws on which the accusation is based, or if the facts alleged may all be true and yet constitute no offense, the indictment is insufficient.... Every material fact and essential ingredient of the offense--every essential element of the offense--must be alleged with precision and certainty,* or, as has been stated, every fact which is an element in a prima facie case of guilt must be stated in the indictment. See ibid, secs. 51-63, 79; 42 C.J.S., Indictments and Informations, Sections 130-137-138. (Emphasis added).

*Love v. State,* 211 Miss. at 611, 52 So.2d at 472. This Court has yet to stray away from these fundamental requirements for the sufficiency of an indictment.

¶19. This Court adopted the Uniform Criminal Rules of Circuit Court Practice (hereinafter "the Uniform Criminal Rules") in 1979. A relevant inquiry exists as to whether the adoption of the Uniform Criminal Rules has in any way attenuated the requirements for the sufficiency of an indictment. We hold that it has not.

¶20. Rule 2.05 of the Uniform Criminal Rules states:

> [t]he indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the *essential facts constituting the offense charged and shall full notify the defendant of the nature and cause of the accusation against him.* Formal or technical words are not necessary in an indictment, if the offense can be substantially described without them.

> An indictment shall **also** include the following:

> (1) The name of the accused;

> (2) The date on which the indictment was filed in each court;

> (3) A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;

> (4) The county and judicial district in which the indictment is brought;

(5) The date and if applicable the time, on which the offense was alleged to be committed. Failure to state the correct date shall not render the indictment insufficient;

(6) The signature of the foreman of the grand jury issuing it; and

(7) The words "against the peace and dignity of the state". (Emphasis added).

¶21. The requirements set forth in Rule 2.05 track the language announced by this Court in *Love v. State* and the numerous cases which followed, and are based upon the well-settled principle that the indictment must contain the "essential elements" of the crime charged. Subsequent to the adoption of the Uniform Criminal Rules, this Court has referenced Rule 2.05 in determining the sufficiency of indictments. *See Holloman v. State,* 656 So.2d 1134, 1139 (Miss.1995); *Roberson v. State,* 595 So.2d 1310, 1318 (Miss.1992); *Armstead v. State of Mississippi,* 503 So.2d 281, 283 (Miss.1987); *Hines v. State,* 472 So.2d at 390; *Harden v. State of Mississippi,* 465 So.2d 321, 324 (Miss.1985). Following these cases, the appropriate inquiry has not changed, rather it remains whether the indictment alleges the essential elements of the crime for which the defendant is charged by containing "a plain, concise and definite written statement of the *essential facts* constituting the offense charged and ... fully (notifying) the defendant of the nature and cause of the accusation against him." *Hines v. State,* 472 So.2d at 390 (quoting Unif.Crim.R.Cir.Ct.Prac. 2.05) (Emphasis added).

¶22. In *Harden,* this Court examined the sufficiency of an indictment for attempted rape, where the issue was whether the indictment sufficiently alleged that the defendant executed an "overt act" toward the commission of the crime. *Harden v. State of Mississippi,* 465 So.2d 321, 323 (Miss.1985). This Court held that the indictment, which charged the defendant with "the making of a lewd suggestion" and "the violent making of an attack or assault" upon his victim, was sufficient to allege that an "overt act" had been committed and notify the defendant that he had been charged with attempted rape. *Id.* at 324. While that Court implied that Rule 2.05 may represent some break with the past as to what is required in an indictment, the indictment there in question clearly met all traditional standards, including a recitation of facts which, if proved, would present a jury question on the offense charged, attempted rape. See *Love v. State,* 211 Miss. at 611, 52 So.2d at 472.

¶23. The trial court based its ruling on this Court's holding in *Hines v. State,* where the Court stated that "an indictment which charges sexual penetration of an identified victim on a specified date in a specified geographical location, including the charge that the acts were committed 'unlawfully, wilfully and feloniously' and a typed label at the top reading 'SEXUAL BATTERY MCA 97-3-95(a)' " is sufficient to charge the defendant with the crime of sexual battery. *Id.* at 390. While it is not noted in the above quote, the indictment in *Hines* also included the "essential fact" that the act was committed "without the consent of ..." the victim. Thus, *Hines* does not stand for the proposition that an element of the crime may be omitted within the indictment.

¶24. The State also relies upon this Court's holding in *Harbin v. State,* 478 So.2d 796 (Miss.1985) where the Court held that the phrase "under circumstances manifesting extreme indifference to the value of human life" was not a necessary element in charging the defendant with the crime of aggravated assault. *Harbin v. State,* 478 So.2d at 798. In *Harbin,* however, the indictment for aggravated assault contained all of the essential elements for the charge of aggravated assault.

¶25. This Court has yet to hold that the essential elements of the crime charged are not necessary to be

included within the indictment. This Court in *Roberson* held that an indictment which cited a statute, rather than the specific subsection of the statute, was sufficient to "provide the defendant with notification in fact of the nature of the charge against him and out of what transaction or occurrence it arose." *Roberson v. State,* 595 So.2d at 1318. In *Roberson,* as with the other cases in which indictments have been upheld, the facts supporting the essential elements of the offense were alleged within the indictment.

¶26. In holding that an indictment was sufficient, this Court in *Holloman* stated that an indictment which includes the seven items enumerated in Rule 2.05 is sufficient to provide the defendant with notice of the charge against him. *Holloman v. State,* 656 So.2d at 1139. However, the Court went on to state that Rule 2.05 "requires that the indictment provide 'a plain, concise and definite written statement of the *essential facts* constituting the offense charged and shall notify the defendant of the nature and cause of the accusation against him.' " *Id.* (quoting Unif.Crim.R.Cir.Ct.Prac. 2.05) (Emphasis added). Lack of consent is an essential fact necessary to constitute the crime of sexual battery.

¶27. The State is correct in asserting that this Court has held that an indictment need not use the precise words of the statute. *See Allman v. State,* 571 So.2d 244, 253-254 (Miss.1990); *Watson v. State,* 483 So.2d 1326, 1328 (Miss.1986). That fact does not excuse a failure to allege essential facts constituting a crime.

¶28. Rule 2.05 cannot be considered apart from the fundamental principle preceding it, that the essential elements of the offense must be alleged in order for an indictment to be sufficient. The right of the accused to be informed of the nature and cause of the accusation against him is essential to the preparation of his defense. *King v. State,* 580 So.2d 1182, 1185 (Miss.1991); *Williams v. State,* 445 So.2d 798, 804 (Miss.1984), *cert. denied,* 469 U.S. 1117, 105 S.Ct. 803, 83 L.Ed.2d 795 (1985); *Westmoreland v. State,* 246 So.2d 487, 489 (Miss.1971), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 702, 30 L.Ed.2d 729, *reh. denied,* 405 U.S. 948, 92 S.Ct. 931, 30 L.Ed.2d 818 (1972).

¶29. Other than sexual penetration with another person without his or her consent, an individual may be guilty of sexual battery in violation of Miss.Code Annotated 1972 § 97-3-95 by: (1) engaging in sexual penetration with a child under the age of fourteen years or (2) engaging in sexual penetration with a mentally defective, mentally incapacitated or physically helpless person. As a result of the indictment's failure to allege lack of consent, Peterson reasonably could have prepared a defense refuting a charge that Wright was not mentally defective, while the prosecution would have prepared a case based on Wright's alleged failure to give consent. Thus, he did not have the actual notice necessary to properly prepare his defense.

¶30. The fact that the indictment is integral to the preparation of an individual's defense is also evident from our post 2.05 holdings that once an individual has been indicted by a grand jury, such an indictment can be amended only "if [such an amendment] does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." *Ellis v. State,* 469 So.2d 1256, 1258 (Miss.1985) (quoting *Shelby v. State,* 246 So.2d 543, 545 (Miss.1971)); *See Griffin v. State,* 540 So.2d 17, 20-21 (Miss.1989), *appeal after remand,* 584 So.2d 1274, 1275-1276 (Miss.1991); *Akins v. State,* 493 So.2d 1321 (Miss.1986). Peterson's indictment for sexual battery was insufficient because it failed to notify him that he was being charged with sexually penetrating Wright without her consent. Thus, the defendant's demurrer to the indictment should have been sustained.

**b.**

¶31. Peterson also argues that the trial court erred in not allowing the defendant to question Wright about a previous incident where Wright and the defendant were kissing at a friend's home a month prior to the alleged incident. Although asserting that the incident may not have been characterized as past sexual behavior, the defendant sought to inquire about the incident as evidence of the parties' familiarity with each other which would presumably support the defense of consent. The trial court stated that such conduct "is a part of sexual behavior ... [and] a part of a sexual relationship." Subsequent to its determination that the kissing between the parties was a part of a past sexual relationship, the trial court denied its admissibility based upon Mississippi Rule of Evidence 412.

¶32. Under the Supreme Court's standard of review, the admissibility of evidence rests within the discretion of the trial court. *Baine v. State of Mississippi,* 606 So.2d 1076, 1078 (Miss.1992); *Wade v. State,* 583 So.2d 965, 967 (Miss.1991). However, this Court must also determine whether the trial court employed the proper legal standards in its fact findings governing evidence admissibility. *Baine v. State of Mississippi,* 606 So.2d at 1078. If in fact the trial court has incorrectly perceived the applicable legal standard in its fact findings, the Court applies a substantially broader standard of review. *Id.* However, a denial of a substantial right of the defendant must have been affected by the court's evidentiary ruling. *Jackson v. State,* 645 So.2d 921 (Miss.1994); *Newsom v. State,* 629 So.2d 611, 612 (Miss.1993); *Collins v. State,* 594 So.2d 29, 34 (Miss.1992). Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs. *Parker v. State,* 606 So.2d 1132, 1137-1138 (Miss.1992).

¶33. Rule 412(b)2(B) of the Mississippi Rules of Evidence provides, in pertinent part, that evidence of a victim's past sexual behavior other than reputation or opinion evidence is not admissible unless such evidence other than reputation or opinion evidence is behavior that occurs with the accused, and is offered by the accused on the issue of whether the victim consented to the alleged sexual offense. The trial court did not consider this provision of Rule 412 before making its determination that the evidence of sexual conduct between Peterson and Wright was inadmissible.

¶34. On the contrary, the court merely confirmed that the kissing between the parties was in fact sexual conduct and made no reference to the exceptions to the general rule of inadmissibility of a victim's past sexual behavior. One such exception lies where the past sexual behavior occurs between the parties and it is offered by the accused to support the defense of consent. This exception was sufficiently offered by the defendant, and the issue was properly preserved for review. *See Collins v. State of Mississippi,* 594 So.2d 29, 34-35 (Miss.1992). If the trial court had noted this exception and determined that the evidence was irrelevant following Rules 412(c)2 and (c)3, then it would have applied the proper legal standards, thus limiting this Court's review of its factual determinations. However, the trial court committed error by not applying the proper legal standards as to the material issue of whether there was consent on the part of Wright.

¶35. The mere fact that the trial court committed error in an evidentiary ruling does not by itself warrant a reversal by this Court. *See Jackson v. State,* 645 So.2d 921 (Miss.1994); *Newsom v. State,* 629 So.2d at 612. The trial court's error must have affected a substantial right of the defendant. *Id.* Considering the evidence presented in the record as a whole, the trial court committed a harmless error.

¶36. In order to assist this Court in determining whether the evidence of kissing would have had any bearing

on a jury's finding of consent, the defense could have defined the nature of the alleged kissing more clearly during its pre-trial motion. The defendant should have also been able to state definitively when the conduct occurred in order to properly assist this Court in determining its relative significance. As it stands now, there is not sufficient evidence before this Court to characterize the trial court's mistake as anything more than harmless error.

¶37. There are several facts within this case which are not disputed. Wright and the defendant were previously acquainted. The defendant describes himself as "high" or intoxicated on the night of this incident. During the sexual encounter between Wright and the defendant, Wright received a bruise to her cheek, a vaginal tear and a large bruise to her head. Wright also ran away from the scene where intercourse had taken place in a distraught, frantic manner, wearing nothing more than an open bra, a blouse with the buttons torn off and her socks.

¶38. Although the defendant was not allowed to introduce evidence of kissing between Wright and himself to prove the existence of a previous relationship, he was allowed to testify regarding incidents of kissing and fondling on the night of the offense. Furthermore, the defense failed to demonstrate the significance and nature of the previous kissing between Wright and Peterson. Considering this testimony in conjunction with the overwhelming weight of the evidence within the record, we conclude that the denial of the admission of this evidence was harmless error which does not warrant a reversal by this Court.

### c.

¶39. Peterson contends that the trial court erred in denying the introduction of a statement made by Wright to him that during an argument on the evening of the incident, another female referred to Wright as a "slut and a whore." The evidence was offered by the defendant as proof of the defendant's state of mind prior to the alleged offense. The defense also asserted that the evidence was relevant "on the issue of consent as to any sexual advances that may have been made later in the evening." The trial court held that such a statement "even if she related it to somebody else, is irrelevant to the issue in this case." On appeal, the defense asserts that this evidence, along with the previous "foreplay" engaged in between the parties, formed part of the defendant's state of mind as to what the defendant could expect regarding sexual relations.

¶40. Although this evidence is an out of court statement made by the alleged victim, it is offered to prove the defendant's state of mind, rather than the truth of its assertions. Thus, it is not hearsay under the Mississippi Rules of Evidence. However, the trial court was within its discretion in determining that the evidence offered by the defendant was irrelevant. Under Rules 412(c)(2) and 412(c)(3), the trial court may determine on the basis of a hearing that the evidence of the alleged victim's past sexual behavior which the defendant seeks to offer is irrelevant. Miss.R.Evid. 412(c)(2), 412(c)(3); *See also,* Miss.R.Evid. 401.

¶41. In this case, the defendant inquired as to whether or not the trial court understood its basis for offering the evidence, and the court responded by reasserting that the evidence was irrelevant to the proceedings at hand. The court stated:

> "How could his state of mind--you mean because she said somebody called her a slut that that encouraged him into the act. I think its irrelevant."

It is clear from the record that the court made a determination as to the relevance of the evidence. Thus, the

trial court's determination as to the admissibility of the statements in question was well within its discretion and will not be disturbed. *Johnson v. State,* 655 So.2d 37, 41 (Miss.1995).

## d.

¶42. The defense attempted to offer evidence that during the preliminary hearing, Wright was specifically asked if she had ever charged or made allegations against anyone in regard to a sexual offense to which she stated that she had not. Subsequently, the defense attempted to offer the testimony of one Todd Vowell who alleged that Wright had informed him during a date that she had been the victim of a previous sexual offense in Philadelphia, Mississippi. The evidence was offered as proof of a false allegation of a past sexual offense under Rule 412(b)(2)(C) of the Mississippi Rules of Evidence. The trial court considered the arguments of the parties and determined "that the issue in this trial is the guilt or innocence of this Defendant of the acts charged at the time ..." and declared the evidence to be irrelevant.

¶43. Initially, the relevant inquiry as to the defendant's assertions is whether the cross-examination of Wright during the preliminary hearing was improper. The defense asked Wright whether she had ever charged or made allegations against anyone regarding rape or sexual advances. This question was improper under Rule 412 of the Mississippi Rules of Evidence. Rule 412 prohibits the introduction of evidence of a victim's past sexual behavior unless it falls under one of the three exceptions in Rule 412(b)(2). The question was not whether she had made any false allegations of a past sexual offense admissible under Rule 412(b)2(C), rather it was whether she had made any allegations at all of such an offense and is therefore improper. The purpose of Rule 412 is to prevent the defense counsel from putting the victim on trial or unfairly invading the victim's privacy and deflecting the jury's attention from the true issue. *Goodson v. State,* 566 So.2d 1142, 1149-1150 (Miss.1990).

¶44. The trial court held that the testimony of Todd Vowell was irrelevant. It is a well-settled principle that it is error to allow a witness to be impeached on a collateral matter, as the defense attempted to do. *Johnson v. State,* 655 So.2d at 40; *Price v. Simpson,* 205 So.2d 642, 643 (Miss.1968). The test for determining if Vowell's testimony is collateral is whether the defense would be able to prove the matter in their case-in-chief. *Johnson v. State,* 655 So.2d at 41; *Price v. Simpson,* 205 So.2d at 643.

¶45. The defense was not allowed to prove that Wright had made an allegation that she had previously been the victim of a sexual offense under Rule 412 because of its general prohibition against evidence of the victim's past sexual behavior. Todd Vowell would have testified that Wright made an allegation of a previous sexual offense. His testimony would not have been that she made a false allegation of a previous sexual offense. Thus, the testimony would have concerned Wright's past sexual behavior falling under no exception within Rule 412(b)(2). The defendant was not allowed to introduce evidence of the victim's past sexual behavior, thus, the offered testimony of Todd Vowell was collateral and therefore inadmissible to impeach the witness.

¶46. As previously expressed, "the relevancy and admissibility of evidence is largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." *Johnson v. State,* 655 So.2d at 41; *Roberson v. State,* 595 So.2d 1310, 1315 (Miss.1992) (citing *Johnston v. State,* 567 So.2d 237, 238 (Miss.1990)). The trial court expressed "that the issue in this trial is the guilt or innocence of this Defendant of the acts charged at the time...." It further stated that "the very existence of ... [Rule 412] was intended to terminate the former practice of bringing in strangers to the event itself to demean the victim." It is clear from the record that the trial court properly considered arguments from both parties as

well as Vowell's testimony and made a determination that the testimony offered was irrelevant in a hearing in chambers. This Court will not overturn this determination because there was no abuse of discretion on behalf of the trial court.

**e.**

¶47. During trial, the prosecution elicited testimony from Wright's mother concerning the emotional and psychological trauma that her daughter suffered after the alleged rape and sexual battery. Subsequent to this testimony, the defense renewed its motion that Vowell's testimony that Wright had previously been the victim of a sexual offense should be allowed under Rule 412(b)(2)(A) as proof of an alternative source of injury. The trial court again denied the admission of this testimony based on irrelevance.

¶48. Rule 412(b)(2)(A) of the Mississippi Rules of Evidence provides, in pertinent part, that evidence of a victim's past sexual behavior other than reputation or opinion evidence is not admissible unless such evidence is past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen, pregnancy, disease, or injury. The defense cites *People v. Garvie,* 148 Mich.App. 444, 384 N.W.2d 796 (1986), as authority relevant to this issue. However, this Court has also addressed this issue and has held that evidence of a victim's past sexual conduct with persons other than the accused may be admitted as proof of whether the accused was the source of the victim's injury. *See Goodson v. State; Heflin v. State,* 643 So.2d 512 (Miss.1994). However, the Court's previous holdings in these cases do not suggest a similar result in the instant case.

¶49. The more factually similar of these cases is *Heflin,* where the Court held that it was reversible error in a rape prosecution to exclude testimony given to a physician by the victim that she had last had sexual intercourse with her boyfriend within a week of the offense, that the victim was with her boyfriend two and three days before the alleged rape and wore the same bathing suit in which the seminal fluid was found, and that the victim had the same blood type as the defendant and could therefore have been the source of the sperm found in the bathing suit. *Heflin v. State,* 643 So.2d at 515-516. The evidence in *Heflin* met the threshold for relevance. *Id.* Thus, the Court could not conclude that the exclusion of this evidence was harmless or more prejudicial than probative. *Id.* at 515.

¶50. The facts in this case do not warrant a similar conclusion. The trial court made a finding that the testimony of Todd Vowell was irrelevant to the instant case, and that its probative value was outweighed by its prejudicial effect when offered to prove that Wright had made a false allegation of a past sexual offense. It cannot be said that the trial court's finding of irrelevance becomes any less legitimate with the introduction of testimony from Wright's mother.

¶51. Wright's mother, Dot Anderson, testified that Wright's emotional condition completely changed after the alleged offense occurred on September 1, 1991. She testified as to her daughter's state of withdrawal, unwillingness to leave the house or go anywhere unaccompanied, as well as her treatment by psychologists, all of which occurred after September 1, 1991. The defense alleges that Vowell's testimony may be relevant as evidence of an alternative source of injury. However, Vowell's testimony concerns an event that at the very least would have occurred over five months prior to the present offense, which is substantially longer than the period of time which past between the past sexual behavior offered and the alleged offense in *Heflin.* The causal relation between the evidence the defense seeks to introduce and the emotional trauma suffered by the victim is remote at best.

**f.**

¶52. The defendant's final assignment of error concerns the trial court's alleged error in giving instruction S-7, which is a standard *McDaniel* instruction adopted by this Court in *McDaniel v. State,* 356 So.2d 1151 (Miss.1978). The instruction reads:

> The Court instructs the jury that in order for intoxication to be a defense to a crime, the intoxication must be involuntary on the part of the defendant, and must be to such a degree as to make the person committing the crime unable to know the nature and quality of the act he is committing, or if he did understand them, that he did not know what he was doing was wrong.

The defense contends that the instruction constituted false and misleading information to the jury because the defendant never attempted to use his intoxication as a defense. As a result of this instruction, the Peterson contends that he was prejudiced.

¶53. A jury instruction may be improper if it incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions. *Murphy v. State,* 566 So.2d 1201, 1206 (Miss.1990); *U.S. v. Robinson,* 700 F.2d 205, 211 (5th Cir.1983), *appeal after remand* 713 F.2d 110, *reh. den.* 719 F.2d 404, *cert. den.* 465 U.S. 1008, 104 S.Ct. 1003, 79 L.Ed.2d 235 (1984). However, the Mississippi Supreme Court has held that "jury instructions are to be read as a whole and no one instruction is to be taken out of context of the whole." *Mackbee v. State,* 575 So.2d 16, 34 (Miss.1990); *Jackson v. Griffin,* 390 So.2d 287, 290 (Miss.1980); *Alexander v. State,* 250 So.2d 629, 632 (Miss.1971). A court's jury instructions "will not warrant reversal if the jury was fully and fairly instructed by other instructions." *Collins v. State,* 594 So.2d 29, 35 (Miss.1992); *Laney v. State,* 486 So.2d 1242, 1246 (Miss.1986).

¶54. Peterson fails to cite any authority in support of his position. This Court has held that it is the affirmative duty of an appellant to provide authority in support of an assignment of error. *Barnes v. A Confidential Party,* 628 So.2d 283, 289 (Miss.1993); *Roberson v. State,* 595 So.2d 1310, 1318 (Miss.1992); *Kelly v. State,* 553 So.2d 517, 521 (Miss.1989); *Brown v. State,* 534 So.2d 1019, 1023 (Miss.1988), *cert. denied* 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989); *Shive v. State,* 507 So.2d 898 (Miss.1987). In the absence of such support, this Court is under no obligation to address an assignment of error. *Barnes v. A Confidential Party,* 628 So.2d 283, 289 (Miss.1993); *Caruso v. Picayune Pizza Hut, Inc.* 598 So.2d 770, 776 (Miss.1992); *Kelly v. State,* 553 So.2d 517, 521 (Miss.1989).

¶55. There is ample authority to support the trial court's actions in giving the jury instruction. This Court in *Norris v. State,* 490 So.2d 839 (Miss.1986) held that where the defendant makes his intoxication an issue in the case, the trial court may issue a *McDaniel* instruction. In *Norris,* the Court observed that "a jury could reasonably infer from the testimony of Norris that, because he was so drunk, he did not know what he was doing. From that, a reasonable juror could infer that Norris did not have the requisite intent to commit the crime...." *Id.* at 842.

¶56. As in *Norris,* the defendant in the present case asserts that the trial court committed error in giving the *McDaniel* instruction because intoxication was not asserted as a defense. However, the defendant did testify that he was both drunk and high at the time the alleged offense occurred. From this testimony, a jury could reasonably infer that the defendant was not aware of his actions, thus not having the requisite intent to commit the crime. Therefore, the defendant made his intoxication an issue in this case, and it was proper for

the trial court to give instruction S-7 to the jury.

¶57. Furthermore, when read as a whole, it is clear that the jury instructions were proper as to the State's burden of proof and the elements of the applicable crimes. Thus, the defendant was not prejudiced in this case by instruction S-7 even though intoxication was not an alleged defense to the crime. *See Id.* The jury was fully and fairly instructed by the other instructions. We therefore decline to reverse the trial court's holding on the basis of improper jury instructions.

¶58. Peterson's conviction for the charge of rape is affirmed. For the foregoing reasons, however, Peterson's conviction for the charge of sexual battery is reversed based on the insufficiency of the indictment.

**¶59. COUNT I: CONVICTION OF RAPE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II: REVERSED AND RENDERED.**

**DAN M. LEE, C.J., and PRATHER and SULLIVAN, P.JJ., concur. McRAE, J., concurs in result only. JAMES L. ROBERTS, Jr., joins this opinion in part. PITTMAN, J., dissents as to count II with separate written opinion joined by JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ.**

**PITTMAN, Justice, dissenting:**

¶60. Justice Banks in his majority opinion attempts to return this Court to a standard that since 1979 has been modified. Prior to the enactment of the Uniform Rules of Circuit Court, this Court did hold that an indictment must contain the elements of the crime. We held indictments to a strict standard of review. The statement that "[i]t is a well-established principle of law that in order for an indictment to be sufficient, it must contain the essential elements of the crime charged" strays from this Court's holdings since 1979. Except for one, all the cases Justice Banks cites to uphold this bold statement are dated prior to 1979. He specifically cites to *Love v. State* for the proposition that "[e]very material fact and essential ingredient of the offense--every essential element of the offense--must be alleged with precision and certainty," *Love v. State,* 211 Miss. 606, 611, 52 So.2d 470, 472 (Miss.1951), and states that we have not strayed from these requirements. This statement ignores the most recent holdings of this Court.

¶61. In *Harden v. State,* we examined the sufficiency of an indictment. 465 So.2d 321 (Miss.1985). In doing so we noted that Harden was relying upon "a pre-rules case decided in an era when indictments were scrutinized more strictly than today." *Id.* at 324. This is a direct statement that the pre-rules cases are stricter than the standard we have now adopted under the Uniform Rules of Circuit Court. We held in *Harden* that:

> [s]ince the adoption in 1979 of the Mississippi Uniform Criminal Rules of Circuit Court Practice, all questions regarding the sufficiency of indictments have been determinable by reference to Rule 2.05 thereof. This rule articulates seven elements that shall be included in any indictment (and with respect to which there is here no issue) and then directs that
>
> the indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting offense charges and shall fully notify the defendant of the

nature and cause of the accusation against him. Formal or technical words are not necessary in an indictment, if the offense can be substantially described without them.

Rule 2.05 requires notification *in fact* of the nature of the charge against the defendant and out of what transaction or occurrence it has arisen. If an indictment reasonably provides the accused this *actual* notice and includes the seven specific items enumerated in the rule, it is sufficient.

*Harden,* 465 So.2d at 324 (emphasis in original). The Court notes that Rule 2.05 is controlling and actual notice of the crime is all that is required. The indictment need not state formal or technical words that were once required in indictments. In *Henderson v. State,* 445 So.2d 1364 (Miss.1984), the Court stated that "[s]o long as from a fair reading of the indictment taken as a whole the nature and cause of the charge against the accused are clear, the indictment is legally sufficient." *Henderson,* 445 So.2d at 1368.

¶62. The lower court held that the indictment in the present case was sufficient based upon our ruling in *Hines v. State,* 472 So.2d 386 (Miss.1985). In *Hines* the defendant argued that the indictment was too general to give him fair notice of the crime with which he was charged. This case is analogous and directly on point with the case at bar. Hines' main complaint was that the indictment lacked a bill of particulars and thus, would threaten his double jeopardy right. We held that this argument was without merit. We held that "it would seem apparent that the broader the charging language of the indictment, the broader the double jeopardy protections afforded." 472 So.2d at 390. Therefore, in regard to double jeopardy, the indictment was more than sufficient.

¶63. The Court then said:

In the final analysis, our inquiry is whether the indictment contains

a plain, concise and definite written statement of the essential facts constituting the offense charged and ... fully (notifies) the defendant of the nature and cause of the accusation against him.

Rule 2.05, Unif.Crim.R.Cir.Ct.Prac.

We hold that an indictment which charges sexual penetration of an identified victim on a specified date in a specified geographical location, including the charge that the acts were committed "unlawfully, wilfully and feloniously" and a typed label at the top reading "SEXUAL BATTERY MCA 97-3-95(a)" charges the accused with the criminal offense of sexual battery with such force that his demurrer will be unavailing. *See Harden v. State,* 465 So.2d 321, 324 (Miss.1985); *Jones v. State,* 461 So.2d 686, 693-94 (Miss.1984); *Thames v. State,* 454 So.2d 486, 487 (Miss.1984); *Henderson v. State,* 445 So.2d 1364, 1367-68 (Miss.1984). The assignment of error is denied.

*Hines,* 472 So.2d at 390. It is true that the indictment in *Hines* contained the words "without consent." However, the majority fails to notice that in determining what kind of indictment is sufficient to give notice to the defendant of the charges against him, the Court's entire analysis was the portion quoted above. The court did not require a specific list of elements for the charge of sexual battery. The Court did not say that because all the elements were present, including "without consent," that the indictment was sufficient. It said that as long as:

an indictment which charges sexual penetration of an identified victim on a specified date in a specified geographical location, including the charge that the acts were committed "unlawfully, wilfully and

feloniously" and a typed label at the top reading "SEXUAL BATTERY MCA 97-3-95(a)" charges the accused with the criminal offense of sexual battery with such force that his demurrer will be unavailing.

*Hines,* 472 So.2d at 390. We did not hold that every essential element had to be specifically included. The indictment in the case at bar included all the requirements cited above.

¶64. We have held consistently since the adoption of the rules that the only requirement of the indictment is that it provide notice to the defendant and include the seven enumerated items in Rule 2.05 of the Uniform Rules of Circuit Court. The majority would return the Court to the strict standard of the pre-rules cases without overruling those cases.

¶65. In *Jones v. State,* 461 So.2d 686 (Miss.1984), this Court stated:

> Our Uniform Criminal Rules of Circuit Court Practice were formally adopted August 15, 1979. The rules were in effect at the time of the return and filing of the original indictment in this cause on February 20, 1981. The sufficiency under Mississippi law of the form of that indictment, accordingly, is determined according to Rule 2.05.

> Jones' reliance upon Section 99-17-20, an enactment of the Legislature of the State of Mississippi, is ultimately without merit for reasons we trust are obvious and accepted at this point in time. **The form of an indictment being a matter purely procedural, it is this Court's prerogative and responsibility to adopt rules regulating the same.** Rule 2.05 provides for a full and fair protection of the rights of accused. The rules fully regard the due process rights of the accused to reasonable advance notice of the charges against him.

*Jones,* 461 So.2d at 694 (emphasis added). This case was a capital murder case that misstated the statute in the indictment. However, the indictment was still held to be valid. This case shows that it is the rules that determine the sufficiency of an indictment.

¶66. In *Roberson v. State,* 595 So.2d 1310 (Miss.1992), we held that:

> Rule 2.05 of the Unif.Crim.R.Cir.Ct.Prac. has as its object to provide the defendant with notification in fact of the nature of the charge against him and out of what transaction or occurrence it arose. If it reasonably provides the accused with actual notice and includes the seven enumerated items then the indictment is sufficient. *Armstead v. State,* 503 So.2d 281, 283 (Miss.1987).

*Roberson,* 595 So.2d at 1318. The *Armstead* case cited above is similar to the one at bar. It is a rape case where the indictment did not include the term "intent," however, it did charge the appellant with "wilfully and feloniously" attempting rape. *Armstead,* 503 So.2d at 283. The Court held that "the indictment was sufficient to fully notify the defendant of the nature and cause of the accusation against him." *Id.* Is there any doubt in the case *sub judice* that the defendant understood what he was charged with and what he was expected to defend? This Court shoul d realistically deal with real problems, not create technical questions to peruse. We should note the obvious and not play "I gotcha games" with the trial court.

¶67. The bottom line is that we refer to Rule 2.05 to determine whether the indictment is sufficient to give notice. In *Holloman v. State,* 656 So.2d 1134 (Miss.1995), this Court again reaffirmed that as long as the indictment meets the requirements of Rule 2.05 (notice and the seven elements), then the indictment is

sufficient.

¶68. For the foregoing reasons, I must respectfully dissent. I am of the opinion that the indictment was sufficient to give the defendant notice as required by this Court.

**JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., join this opinion.**