SOUTHWICK, P.J.,
DISSENTING
¶ 13. In my view this indictment failed to charge any crime. I would grant the requested relief.
¶ 14. The majority agrees that an indictment’s failure to charge an offense is not waived by a guilty.plea. However, it finds that this indictment did not suffer from that defect. The majority surely agrees that the body of the indictment in no manner charged the core illegal act that Jones was alleged to have committed, namely, escaping. It charged that Jones did an unstated act unlawfully “from said penitentiary.” Escape is not the only crime that can be committed from a prison. The charging language of the indictment did not inform Jones of his alleged crime.
¶ 15. What must be utilized to correct the indictment’s defect is the caption. Whether the caption is an adequate repair is the determination that divides me from the majority opinion.
¶ 16. My first point is basic. I find that knowing what statute applies to Jones’s offense is not an adequate correction of the indictment. I quote all but the formal parts of the indictment:
INDICTMENT ESCAPE 97-9-45
HABITUAL 99-19-81
That Henry Lee Jones, # 85448 late of the County aforesaid, having been previously confined in the Mississippi State Penitentiary at Parchman, Mississippi, on or before March 20, 1995, did unlawfully, wilfully and feloniously from said penitentiary or his housing unit at said penitentiary.
¶ 17. The majority argues that Jones knew that he was being charged with escape. The caption to the indictment used the word and cited the statute. We also appear to conclude that he knew that he was guilty of escape since he was found in Las Vegas. I find Jones’s knowledge of the crime that he had actually committed was an insufficient basis to uphold the indictment that did not tell him which crime the State would attempt’ to prove. An appellate court should not measure validity depending on whether the accused after conviction appears reliably guilty. An indictment should leave no uncertainties about the charge either with the guilty or with the innocent.
¶ 18. An accused under this indictment would have several uncertainties. One is whether the State would attempt to prove an actual escape, which the hypothetical innocent inmate could try to disprove by showing that he never left the prison and the escapee was someone else. If instead the State only tried to prove an attempt, such a defense would not be permissible.
¶ 19. Another uncertainty arises from a different section in the statute that a “convict who is entrusted to leave the boundaries of confinement [by proper authorities] and who wilfully fails to return ... shall be considered an escapee.” Miss. Code Ann. § 97-9-45 (Rev.1994).
¶ 20. Did the indictment captioned “escape” that said Jones had “wilfully and feloniously from said penitentiary” charge him with an actual escape, with an attempted escape, or with leaving with permission and then failing to return? If a statute provides for alternative means of committing the same crime such as for assault, those options must be separately identified in the indictment or the State is limited to proving the alternatives that are listed. Smith v. State, 754 So.2d 1159, 1163 (Miss.2000).
*583 ¶ 21. The Supreme Court has held that the first section of the statute for escape from county jails provides for two separate offenses, escape and attempted escape. Miller v. State, 492 So.2d 978, 981 (Miss.1986) (citing Miss.Code Ann. § 97-9-49(1) (Rev.1994)). That is because the elements for attempted escape from a county jail include the use of “force or violence,” while prosecution for a successful escape does not require that force be proven. Id. Not relevant in Miller but subject to the same interpretation is that the second section of the county jail escape statute defines yet another separate offense, which is to leave the jail with permission and refuse to return. Miss.Code Ann. § 97-9-49(2). The second unnumbered paragraph of the statute under which Jones was charged, escape from a state prison facility, also is a distinct crime separate from the first paragraph.
¶ 22. The defect in this indictment is the opposite of those just described from other precedents. The precedents dealt with indictments that identify some of the statutory means to commit a crime, followed at trial with proof of a means not charged. The most that can be said about this indictment is that it stated none of the various means to commit the crime and just mentioned the statute. I find that this constituted a failure to inform Jones at the very least “of the essential facts constituting the offense charged” as required by a criminal procedural rule that I will discuss below. It also failed to charge the most essential elements of the offense.
¶ 23. Next I examine the authorities relied upon by the majority. The first precedent discusses an indictment in which the word “concealed” was omitted in a charge of carrying a deadly weapon by a convicted felon. Jones v. State, 383 So.2d 498 (Miss.1980). The majority here states that in Jones the accused was charged under Miss.Code Ann. section 97-37-1, which is the general concealed weapon statute. Reading the indictment quoted in the opinion, though, which mentions both his possession and the fact that he was a convicted felon, it appears he was charged under section 97-37-5. Id. at 499-500. The latter statute states that “possession of any deadly weapon as described in Section 97-37-1 by any person who has been convicted of a felony” is unlawful. By using the phrase “possession of any deadly weapon as described in section 97-37-1,” the possession by a felon statute is potentially incorporating only the list of deadly weapons — “bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, slingshot, pistol, revolver,” etc. Alternatively, it is adopting also the specific kind of possession required by section 97-37-1, which is that the weapon be “concealed in whole or in part.” The Jones court held that there was no general crime of carrying a weapon by a felon — “There is no statute which makes it a violation to carry a deadly weapon, unless it be concealed in whole or in part.” Id. at 500. Thus under the Jones interpretation a felon can carry a deadly weapon so long as it is not concealed. “Concealed” is a necessary element.
¶ 24. In Jones the indictment did not use the word “concealed.” There is no mention in the case whether the indictment referred to the statute. Nonetheless, the court concludes that since the only way to commit the crime is by concealing the weapon, and since that defendant never denied that he concealed it, the indictment fairly informed him of the charge against him. Id.
¶ 25. Jones has only been cited once since 1980 and only for the statement that normally an accused must demur to the indictment. Gandy v. State, 438 So.2d 279, 285 (Miss.1983). Jones is difficult to reconcile with cases to be discussed below that reversed convictions because an indictment did not charge each element of the offense. That an accused knew the charges despite omissions in the indictment has not been sufficient. Jones also seems in tension with the principle cited in the majority opinion here, namely, that a *584 guilty plea does not waive the failure of an indictment to charge an essential element of the offense.
¶ 26. In my view Jones’s reasoning has since been overturned even if the case has not been formally overruled. The Supreme Court has since given a much different list of requirements.
It is fundamental ... that an indictment, to be effective as such, must set forth the constituent elements of a criminal offense; if the facts alleged do not constitute such an offense within the terms and meaning of the law or laws on which the accusation is based, or if the facts alleged may all be true and yet constitute no offense, the indictment is insufficient. ... Every material fact and essential ingredient of the offense' — every essential element of the offense — must be alleged with precision and certainty, or, as has been stated, every fact which is an element in a prima facie case of guilty must be stated in the indictment.
Peterson v. State, 671 So.2d 647, 654 (Miss.1996) (quoting Love v. State, 211 Miss. 606, 611, 52 So.2d 470, 472 (1951)). After acknowledging that a procedural rule now controls, the Court stated that “the appropriate inquiry ... remains whether the indictment alleges the essential elements of the crime for which the defendant is charged by containing ‘a plain, concise and definite written statement of the essential facts constituting the offense charged and ... fully (notifying) the defendant of the nature and cause of the accusation against him.’ ” Peterson, 671 So.2d at 654, (quoting Hines v. State, 472 So.2d 386, 390 (Miss.1985)), which was partially a quote of Uniform Criminal Rules of Circuit Court Practice 2.05. This referenced rule is now Uniform Rule of Circuit and County Court Practice 7.06.
¶ 27. The- Peterson indictment failed to assert that the sexual battery was “without the consent” of the victim, an omission that the State argued was corrected by the indictment’s citation of the sexual battery statute. The Courts found that an inadequate correction.
This Court has yet to hold that the essential elements of the crime charged are not necessary to be included within the indictment. This Court in Roberson held that an indictment which cited a statute, rather than the specific subsection of the statute, was sufficient to “provide the defendant with notification in fact of the nature of the charge against him and out of what transaction or occurrence it arose.” Roberson v. State, 595 So.2d [1310,] 1318 [(1992)]. In Roberson, as with the other cases in which indictments have been upheld, the facts supporting the essential elements of the offense were alleged within the indictment.
Peterson, 671 So.2d at 654. The Court then stated that despite the mention in Hines of the indictment’s citation of the criminal statute, in fact all the elements of the offense actually were present in the indictment. Id.
¶ 28. I find no case in which the Supreme Court has permitted an essential element of the crime to be supplied by the language that appears in a statute referenced in the indictment. In one case the court found that referring to the entirety of the murder statute, which involved both capital and non-capital murder, did not create a defect since the language of the indictment made it clear that a non-capital crime was charged. Greenlee v. State, 725 So.2d 816, 821-22 (Miss.1998).
¶ 29. What to make of this requires deciding whether Peterson and subsequent cases are holding that the document that begins a person’s criminal proceedings must meet certain formal requirements and not only satisfy the need for actual notice. See also Hennington v. State, 702 So.2d 403, 408 (Miss.1997). A lengthy dissent in Peterson identifies and criticizes the result as simply putting form over need. Peterson, 671 So.2d at 660-61 (Pittman, J., dissenting). Reviewing various precedents after what is now Circuit and *585 County Court Rule 7.06 was first adopted in 1979, the dissent finds that “the only requirement of the indictment is that it provide notice to the defendant and include the seven enumerated items in Rule 2.05 of the Uniform Rules of Circuit Court.” Id. at 661-62.
¶ 30. This is an interpretative point being contested in Peterson. It is how to read what is now Rule 7.06. The choice is between making indictments strictly a matter of reasonable notice to the accused or instead requiring that each element of the offense be stated in the indictment. The Peterson majority held that each element must be charged. Actual notice of the charge is not enough. Rejected was the idea that an indictment could generally charge a crime, leaving elements out without voiding the indictment so long as a court ultimately decides enough information could be pieced together from other sources. The indictment is a formal presentation by the State of the charges. The Peterson majority might have considered that at the very instant that criminal proceedings are commenced, ambiguity should not threaten what follows. By choosing a formalistic approach, the majority was not making resolution of indictment issues invariably easy. It was simply keeping the focus on something essentially objective— inclusion of every element — and avoiding the subjective question of whether under some totality of the circumstances approach the accused had reasonable notice of the charge. This is strictly a matter of what Rule 7.06 means. A new majority may one day adopt the view of the dissent. In the meantime, it is this intermediate court’s role to apply existing rules.
¶ 31. One result of applying the Peterson majority’s holding is that it dovetails well with the related principles that this Court today must apply. The Peterson dissent’s view that every element does not need to be in the indictment is in instant conflict with the rule the majority here is applying, which is that a plea of guilty does not waive an indictment’s failure “to charge an essential element of the offense.” A post-Peterson 1997 case is cited for that guilty plea requirement. Drennan v. State, 695 So.2d 581, 584 (Miss.1997). Drennan makes unwaivable what the Peterson dissent does not think is even a defect.
¶ 32. Though I find that the indictment must contain each element of the offense, and missing essential elements cannot be incorporated by referring to the statute that will contain all the elements, our case presents yet another consideration. What I find exceptional here, even if a reference to a statute is not generally sufficient to supply a missing element, is that the majority sees the missing element as the central but simple word that defines the crime — “escape.” If the word “escape” is floating about on the face of the indictment somewhere, and that disembodied word is the only one missing, can it be grafted onto the charging language in the body of the indictment and thereby make it complete? The analysis would be something like this: (1) the only element of the crime missing is the word “escape”; (2) the word “escape” appears elsewhere on the indictment outside of the charging language; therefore, (3) the missing word, actually not missing at all but only inexpertly placed, can be inserted where it can complete the charge.
¶ 33. Because of Peterson, which in my interpretation is requiring almost ritualistic order and clarity to indictments, I cannot accept this as a repair of the defect. Moreover, what is floating in the indictment unmoored to any sentence is the reference to the escape statute, not just the word “escape.” How that statute with its multiple means to commit an escape fleshes out the slim language of the charge itself is too uncertain to be the answer to the problem in this case.
¶ 34. I find the indictment failed to charge the most essential element of the offense. That issue is not waived by a guilty plea. I would reverse.
*586 McMILLIN, C.J., KING, P.J., BRIDGES AND IRVING, JJ., JOIN THIS SEPARATE OPINION.