751 So.2d 1090 (1999)
Mack A. HAWTHORNE a/k/a Mack Alfred Hawthorne, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-00959-COA.
Court of Appeals of Mississippi.
June 29, 1999.
*1091 Leslie C. Gates, Meridian, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING.
SOUTHWICK, P.J., for the Court:
¶ 1. The previous opinion of the court is withdrawn and rehearing is granted. Mack A. Hawthorne was convicted of one count of attempted sexual battery and one count of aggravated assault by a jury in the Circuit Court of Lauderdale County. Hawthorne appeals alleging that the trial court erred in the following respects: (1) in failing to grant his motion to dismiss Count I of the indictment because it failed to allege the lack of consent of the victim and an overt act; (2) in allowing the State to amend Count II of the indictment so that the word "serious" was added as a modifier of "bodily injury"; (3) in amending the indictment to add habitual offender allegations; and (4) in sentencing Hawthorne to serve thirty years on the charge of attempted sexual battery. Finding merit in Hawthorne's first and second assignments of error, we reverse and remand.

FACTS
¶ 2. At approximately 8:30 p.m. on February 5, 1996, Hawthorne forced his way into the home of sixty-seven-year-old Virgie Tucker. Tucker testified at trial that Hawthorne knocked on her door asking for food. She did not know him, but thought that she recognized him as a man who lived on the street behind her house. When she said that she did not have any food, he then asked for a drink of water. Tucker closed the door and went to the kitchen and poured Hawthorne a glass of water. When Tucker came back to the door, Hawthorne forced his way into the house and told Tucker that he was going to kill her.
¶ 3. Tucker began screaming, so Hawthorne shoved his fist down her throat until Tucker could barely breathe. When he removed his fist, she screamed again, and Hawthorne jammed his fist down Tucker's throat twice more. Finally, he said that if she screamed again, he would stab her. Though she did not see a knife, Tucker stopped screaming.
¶ 4. Tucker testified that Hawthorne pushed her onto the bed, holding her with *1092 one hand and pulling his coveralls off with the other. She further testified that Hawthorne tried to pull her nightgown up, but she held it down. Hawthorne told her that he was going to rape her and kill her. During the struggle, the police arrived in response to a call from a neighbor whose house Hawthorne had approached before going to Tucker's. The neighbor suspected that Hawthorne was drunk and watched him force his way into Tucker's home. Upon arriving at the scene, the Meridian police officers found Hawthorne with his coveralls down, pants unzipped, and missing one boot. Tucker was bleeding and her gown was torn.
¶ 5. The Grand Jury returned a two count indictment against Hawthorne. Based on a motion filed several days before trial, the State was allowed to amend the indictment to include habitual offender allegations on the day of trial. The first count charged Hawthorne with attempted sexual battery. The second count charged Hawthorne with aggravated assault. At the close of the State's case, the trial court allowed Count II to be amended to add the word "serious" as a modifier of "bodily injury." The defense then moved to dismiss based on the insufficiency of both counts of the indictment. The trial court overruled the objection and denied the motion to dismiss finding that it was an untimely demurrer to the indictment.
¶ 6. Hawthorne took the witness stand in his own defense. He told the jury that he had been drunk that night. Hawthorne admitted to going to Tucker's house and arguing with her about coming into her house. He stated that he had shoved her and possibly bumped her lip. Also, he recalled that his fist had "sort of stuck in her mouth." Hawthorne denied that he had planned to rape Tucker. He denied that his coveralls were down and his pants unzipped. He also denied that he was missing a boot, although one was discovered on the floor of Tucker's bedroom by the police. He basically told the jury that all of the other witnesses were lying and he was the only person telling the truth.
¶ 7. At the close of the case, the defense renewed its motion to dismiss. The motion was denied and the case was submitted to the jury. The jury returned a verdict of guilty on both counts.

DISCUSSION

PART I. COUNT I OF INDICTMENT ON ATTEMPTED SEXUAL BATTERY
¶ 8. Hawthorne asserts as error the trial court's submission to the jury the question of whether he was guilty of attempted sexual battery under Count I of the indictment. Hawthorne claims that since the indictment failed to allege the lack of consent of the victim and an overt act, essential elements of the crime of attempted sexual battery, the indictment was insufficient. "The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review...." Peterson v. State, 671 So.2d 647, 652 (Miss.1996).
¶ 9. The supreme court has held that "in order to be sufficient, the indictment must contain the essential elements of the crime with which the accused is charged." Hennington v. State, 702 So.2d 403, 407 (Miss. 1997). The previous year the court specifically found that the failure to allege the lack of consent in a sexual battery indictment was a fatal error. Peterson, 671 So.2d at 653.
It is fundamental ... that an indictment, to be effective as such, must set forth the constituent elements of a criminal offense; if the facts alleged do not constitute such an offense within the terms and meaning of the law or laws on which the accusation is based, or if the facts alleged may all be true and yet constitute no offense, the indictment is insufficient.... Every material fact and essential ingredient of the offenseevery essential element of the offensemust be alleged with precision and certainty, *1093 or, as has been stated, every fact which is an element in a prima facie case of guilty must be stated in the indictment.
Hennington, 702 So.2d at 408, quoting Peterson, 671 So.2d at 653.
¶ 10. The distinction that can be drawn here is that in Peterson the indictment did not refer to the sexual battery statute at all, but instead to Section 97-3-103. Peterson, 671 So.2d at 652. Thus the defendant could not know which of the sexual battery statute's three subsections would be the basis of proof: (1)(a) without consent, (1)(b) with a mentally or physically handicapped person, or (1)(c) with a child under age 14. Id. at 655; Miss.Code Ann. § 97-3-95.
¶ 11. The indictment of Hawthorne was more specific. Count I charged Hawthorne as follows: "did then and there wilfully, unlawfully and feloniously attempt to engage in sexual penetration as defined by MCA § 97-3-97, with Virgie Tucker (dob: 10/18/28), a female person over the age of eighteen years, in violation of Mississippi Code Annotated Section 97-3-95(1)(a) (1972)...." That subsection (1)(a) specifically requires a lack of consent. Whether that is adequate under Peterson depends in part on whether notice is the question, or whether the point is a more technical requirement that the indictment contain "a plain, concise and definite statement of the essential facts constituting the offense charged...." Peterson, 671 So.2d at 655, quoting Unif.Crim. R. Cir. Ct. Prac. 2.05. The Peterson court in discussing one precedent strongly suggested that referring to a specific statutory subsection was inadequate:
This Court has yet to hold that the essential elements of the crime charged are not necessary to be included within the indictment. This Court in Roberson held that an indictment which cited a statute, rather than the specific subsection of the statute, was sufficient to "provide the defendant with notification in fact of the nature of the charge against him and out of what transaction or occurrence it arose." Roberson v. State, 595 So.2d [1310,] 1318 [(1992)]. In Roberson, as with the other cases in which indictments have been upheld, the facts supporting the essential elements of the offense were alleged within the indictment.
Peterson, 671 So.2d at 654. It appears that the court was explaining that despite language in Roberson that a cite to a subsection of a statute provides actual notice, it was still necessary that the indictment contain "the facts supporting the essential elements" of the crime. Id.
¶ 12. This charge against Hawthorne omits the essential element that the crime be without the victim's consent. Notice of that missing element arguably arose from the reference to the specific subsection. For Count I of the indictment it is unnecessary to resolve whether that is adequate under these precedents, as another defect in the indictment has no potential cure.
¶ 13. Besides the absence of words relating to consent, no overt act is alleged indicating the manner in which Hawthorne attempted this crime. See Miss.Code Ann. § 97-1-7 (Rev.1994). When the charge is the attempt to commit a crime, an allegation of an overt act is "mandatory." Watson v. State, 483 So.2d 1326, 1328 (Miss. 1986); Maxie v. State, 330 So.2d 277, 277-278 (Miss.1976). The rules of pleading may not be as technical as in previous judicial eras, but there are still basic obligations with which the State must comply regarding the information provided in an indictment. As to an overt act, the State failed to provide any concise and plain statement of the essential facts that would be alleged. Actually, they provided no statement at all.
¶ 14. It is true that Hawthorne did not demur to the indictment, but the omission of an essential element in an indictment is not waived by failure to demur. Durr v. State, 446 So.2d 1016, 1017 (Miss. 1984). One and perhaps two of the essential elements of the crime of attempted *1094 sexual battery are not contained in the indictment. Consequently, the indictment failed to charge Hawthorne with the crime for which he was convicted.
¶ 15. The conviction under Count I is reversed.

PART II. AMENDMENT TO COUNT II OF INDICTMENT
¶ 16. Hawthorne also contends that the trial court erred in allowing an amendment to the indictment so that the word "serious" was interlined as a modifier of "bodily injury." The second count of the indictment was titled "Aggravated Assault", but defined the crime charged as "wilfully, unlawfully, knowingly, and feloniously and purposely cause or attempt to cause bodily injury to another, Virgie Tucker, with his fist, by striking her in violation of Mississippi Code Ann. § 97-3-7(2) (1972) ...." (emphasis added). The State, recognizing what they deemed to be a clerical error, made a motion to amend the indictment. The trial court denied the defense's motion to dismiss, finding that it was in reality an untimely demurrer to the sufficiency of the indictment, and allowed the State to amend the indictment to add the word "serious" as a modifier of "bodily injury."
¶ 17. This issue causes us to take the analysis of the preceding issue one step further. The discussion of Count I of the indictment revolved around the omission of an essential element of the offense, but the indictment's reference to the relevant statute may have provided the missing element. Count II raises the problem of a missing element; again the indictment referred to the controlling statute and at trial the omission was corrected by amendment.
¶ 18. The same case law as for Count I is initially useful. As recently as in Peterson, the court distanced itself from any suggestion in precedents that the failure to assert an essential element of an offense in the indictment could be cured by reference to a code section in which the element appeared. Peterson, 671 So.2d at 654-55. The dissent specifically called the majority to task for reinvigorating older law that in the dissent's view had been substantially modified on this issue. Id. at 660-61 (Pittman, J., dissenting). The result though, not changed by later precedents, is that every element must be alleged.
¶ 19. Serious bodily injury is an element of aggravated assault. Therefore the absence of the word "serious" results in the omission of an essential element of the offense. Here, however, the State was granted the right to amend the indictment. We must decide if that cures the problem.
¶ 20. The propriety of an amendment is generally said to depend upon whether the amendment was one of form or substance. The supreme court has outlined the following test to be used in making such a determination:
whether or not a defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence that the accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance.
Griffin v. State, 540 So.2d 17, 21 (Miss. 1989). The circumstances of Griffin are similar to those here. The charging portion of the indictment also omitted the word "serious" as a modifier of "bodily injury," but included the language "with a deadly weapon, to wit: a pistol, by shooting....." The indictment was amended to add the phrase "a means likely to produce serious bodily injury" after the word "pistol." The addition of this phrase changed the defense's entire strategy because they had built their case around the theory that the firing of the gun was accidental.
¶ 21. There is no such frustration of a defense strategy in Hawthorne's case. The indictment as amended did not negate a defense that Hawthorne was relying upon in his case. Hawthorne had been *1095 informed by the indictment that he was charged with aggravated assault. It was so titled and the aggravated assault statutory section was referenced. Hawthorne's defense concerned absence of intent, such as his hand accidentally falling into her mouth when he was drunk. The amendment completed a matter of statutory form that did not affect Hawthorne's defense. We find, however, that prejudice is not the sole test of whether this kind of amendment is proper.
¶ 22. The inadequacy of an indictment that fails to allege each individual element and the right of the State to amend an indictment for matters of form are concepts that must be reconciled. In one case, the indictment had failed to state that the substance named in the indictment, "preludin," contained the controlled substance "phenmetrazine." Brewer v. State, 351 So.2d 535, 536 (Miss.1977). Preludin was not listed in any statute as a controlled substance. "Therefore, an essential ingredient of the indictment was omitted and the indictment was invalid. Under these circumstances the indictment could not be amended." Id. A later case described Brewer as holding that "a substantive defect in an indictment cannot be cured by extrinsic proof and is not waived by the failure to demur thereto." Copeland v. State 423 So.2d 1333, 1336 (Miss. 1982). In Copeland, the controlled substance was said to be "methylenedioxy amphetamine," when the proper name for it also contained the numerals "3, 4" immediately preceding the words. The State argued that the omission was a matter of form and therefore amendable, but the court held that an amendment to add an essential element was improper. Id.
¶ 23. Returning to the case law discussed under Count I, we find the controlling consideration to be that "every fact which is an element in a prima facie case of guilty must be stated in the indictment." Hennington, 702 So.2d at 408, quoting Peterson, 671 So.2d at 653. Though this can appear formalistic, it is a formula endorsed by the supreme court. To permit an amendment to add what the grand jury cannot leave out, is to undermine the clarity that cases such as Peterson require in the indictment. Amendments can correct other matters if the nature of the defense is not changed, but cannot add a necessary element to the description of the offense.
¶ 24. Notice is not the issue. It would be hard to argue that Hawthorne was unaware that he was charged with aggravated assault. The obligation is on the State to include each statutory element of the offense in the indictment. It is a hurdle, one on which the State occasionally trips as is shown in the various precedents. The hurdle requires careful attention to detail, but that is all.
¶ 25. The State failed to include each element of the offense in this indictment. The defect was therefore substantive and could not be cured by amendment. The conviction is reversed.

PART III. HABITUAL OFFENDER ALLEGATION
¶ 26. Though we are reversing the assault conviction, we address one final question under that part of the indictment. Hawthorne alleges that the trial court erred in allowing the State to amend the indictment to charge him as an habitual offender. Hawthorne cites a case for the proposition that an amendment to an indictment to add habitual offender allegations is only proper when brought by the grand jury that returned the indictment. Akins v. State, 493 So.2d 1321, 1322 (Miss. 1986). While correct in his interpretation of Akins, Hawthorne fails to note that the law has changed since that ruling. In 1995, Rule 7.09 of the Uniform Rules of Circuit and County Practice was adopted. Rule 7.09 explicitly allows indictments to be amended to charge a defendant as an habitual offender. There is a requirement that the defendant be afforded a fair opportunity to present a defense and that he not be unfairly surprised. Hawthorne makes no claim of surprise or improper *1096 limits on his defense. We find compliance with the rule.
¶ 27. Hawthorne also claims that Rule 7.09 is inconsistent with Rule 11.03 of URCCC. Rule 11.03 states that the indictment must include certain habitual offender information. There is no inconsistency between these rules. Rule 7.09 merely allows the State to comply with Rule 11.03. Accordingly we find no error in that amendment.
¶ 28. PART I: THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF ATTEMPTED SEXUAL BATTERY AND SENTENCE TO SERVE THIRTY YEARS IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS. PARTS II & III: THE JUDGMENT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE TO SERVE TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE TAXED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ AND THOMAS, JJ., CONCUR.
PAYNE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.
DIAZ, J., JOINS IN CONCURRENCE.
IRVING AND LEE, JJ., NOT PARTICIPATING.
PAYNE, J., Concurring In Part, Dissenting In Part:
¶ 29. I agree with the majority's resolution as stated in Part III of this decision, and with a portion of their resolution of Part I, and I concur in those portions of the opinion only. It is with the utmost respect for my majority colleagues that I dissent in regard to the construction given the statutes involved in the majority's resolution of the consent issue in Part I and in toto with their resolution in Part II.
¶ 30. This is a disgusting case of the attempted sexual battery of a sixty-seven year old woman. Most notably proved was the defendant's use of his fist in his attack to quiet his victim when she balked at being assaulted. Hawthorne drove his point home by violently impelling his fist through her teeth several times to its ultimate destinationher throat. Hawthorne added insult to injury by claiming at trial that his fist accidentally fell in the victim's mouth. After that attack, Hawthorne informed his victim that he intended to rape her and kill her.

Part I: Attempted Sexual Battery
¶ 31. The majority states that the indictment charged Hawthorne as follows "did then and there willfully, unlawfully and feloniously attempt to engage in sexual penetration as defined by MCA § 97-3-97, with Virgie Tucker (dob: 10/18/28), a female person over the age of eighteen years, in violation of Mississippi Code Annotated Section 97-3-95(1)(a) (1972)...." The majority implies that this charge omits the essential element that the crime was committed without the victim's consent. Further, my colleagues find that the indictment failed to allege an overt act required in a charge of attempt.
¶ 32. First, I must agree with the majority's conclusion that reversal is mandated on the attempted sexual battery count charged in the indictment because the charging instrument failed to identify an "overt act." The relevant statute regarding attempt provides as follows:
Every person who shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall, where no provision is made by law for the punishment of such offense, be punished as follows: If the offense attempted to be *1097 committed be capital, such offense shall be punished by imprisonment in the penitentiary not exceeding ten years; if the offense attempted be punishable by imprisonment in the penitentiary, or by fine and imprisonment in the county jail, then the attempt to commit such offense shall be punished for a period or for an amount not greater than is prescribed for the actual commission of the offense so attempted.
Miss.Code Ann. § 97-1-7 (Rev.1994) (emphasis added). In my opinion, without the specific wording of the statute and the cases construing it, "attempt to engage in sexual penetration" as found in Hawthorne's indictment may constitute the overt act element needed in the indictment. "Sexual penetration is the essence of the offense of sexual battery." West v. State, 437 So.2d 1212, 1213 (Miss.1983). Sexual penetration is "any penetration of the genital or anal opening of another person's body by any part of a person's body, and insertion of any object into the genital or anal opening of another person's body." Id. Thus, it is arguable that the indictment did adequately allege the "overt act," as it is well-settled that "[f]ormal and technical words are not necessary in an indictment, if the offense can be substantially described without them." Hennington v. State, 702 So.2d 403, 407 (Miss.1997). However, the interpretive authorities relied on by the majority on this point, as well as the more recent case of Eakes v. State, 665 So.2d 852, 859 (Miss.1995), constrain me to reluctantly agree that the indictment in this case did not provide the necessary overt act. This said, I strongly urge the Legislature to consider amending Miss.Code Ann. § 97-1-7 to eliminate the necessity for the articulation of an overt act in the indictment. I believe that the proof should determine whether or not there were sufficient facts for determining that the crime had occurred or whether an attempt to commit the crime was apparent. As it now stands, the overt act requirement of the statute creates a large loophole and serves as a technical mechanism for those charged and convicted of attempt to free themselves from the evidence which reflects guilt beyond a reasonable doubt.
¶ 33. In reference to the issue concerning consent, the majority employs Hennington and Peterson v. State, 671 So.2d 647 (Miss.1996) as authority for concluding that the indictment failed to allege "without the victim's consent." However, the circumstances in the case sub judice are very dissimilar and definitely distinguishable from the facts in Peterson.
¶ 34. Hawthorne was charged with committing an act without the victim's consent. Miss.Code Ann. § 97-3-95(1)(a) (Rev. 1994), states "[a] person is guilty of sexual battery if he or she engages in sexual penetration with: (a) Another person without his or her consent." This particular subsection of the Code, as it was cited in the indictment, does not leave the defendant with the disjunctive position of determining whether he was charged for violating a child under the age of 14 years, Miss.Code Ann. § 97-3-95(1)(c) or whether he violated an individual who is a mentally defective, mentally incapacitated or physically helpless individual as cited in Miss.Code Ann. § 97-3-95(1)(b), as was the case in Peterson. In Peterson, the indictment only cited to § 97-3-95 without any reference to a subsection. Therein lay the fatal flaw in the Peterson indictment:
Other than sexual penetration with another person without his or her consent, an individual may be guilty of sexual battery in violation of Miss.Code Annotated 1972 § 97-3-95 by: (1) engaging in sexual penetration with a child under the age of fourteen years or (2) engaging in sexual penetration with a mentally defective, mentally incapacitated or physically helpless person. As a result of the indictment's failure to allege lack of consent, Peterson reasonably could have prepared a defense refuting a charge that Wright was not mentally defective, while the prosecution would *1098 have prepared a case based on Wright's alleged failure to give consent. Thus, he did not have the actual notice necessary to properly prepare his defense.
Peterson, 671 So.2d at 655.
¶ 35. This is not the case herein. Hawthorne knew that he was charged with committing an act without the victim's consent. Again, while it is true that the "magic words" were not employed, the particular subsection of § 97-3-95 was utilized, unlike the situation in Peterson. Peterson was charged with violating Miss. Code Ann. § § 97-3-65(2) and 97-3-95. What portion of Miss.Code Ann. § 97-3-95 Peterson was accused of violating was unknown to him at the time of his trial. As Hawthorne knew the subsection, and that subsection dealt only with the lack of consent by the victim, I believe this provides a proper basis for validating Hawthorne's indictment on the issue of consent. Unlike Peterson, Hawthorne was not forced to skirmish on two fronts. Simply put, Hawthorne was sufficiently notified via the charging instrument of the charge he was facing, as the indictment contained the full citation of with § 97-3-95(1)(a).

Part II: Aggravated Assault
¶ 36. In addition, as set out by the majority, Hawthorne maintains that the trial court erred in allowing an amendment to the indictment so that the word "serious" was added as a modifier of "bodily injury" under Count II of the indictment. The State, recognizing what was clearly a clerical error, moved to amend the indictment. The motion to amend was allowed by the trial judge.
¶ 37. The majority now concludes that Count II of the indictment was fatally flawed because of the amendment outlined above. I do not agree, and I believe that we properly resolved this issue in our original opinion in this matter. My colleagues correctly note that the appropriateness of an amendment to an indictment turns on whether the amendment was one of form or substance, as outlined by the supreme court in Griffin. Additionally, I agree with the majority's conclusion that the addition of the modifier "serious" did not in any way frustrate or prejudice Hawthorne's defense.
I respectfully part ways with my colleagues, however, when they, to paraphrase Robert Frost, take the jurisprudential road less traveled, or more appropriately not traveled at all, in finding that the absence of the word "serious" renders this indictment fatally defective because "serious" is an element of the offense of aggravated assault. I choose to remain on what I view is the well-worn path reaffirmed in Peterson which the majority misapplies in their analysis: a statutory citation with a specific subsection is sufficient to sustain an indictment. While the Peterson Court may have distanced itself from the notion that specific elements may not be required in the indictment, they undoubtedly reaffirmed the well-settled rule of law that indictments "need not use the precise words of the statute." Peterson, 671 So.2d at 654 (Miss.1996) (citing Allman v. State, 571 So.2d 244, 253-254 (Miss.1990); Watson v. State, 483 So.2d 1326, 1328 (Miss.1986)).
¶ 38. Aside from what I believe to be an erroneous interpretation of Peterson in this case, the Peterson case was not one of aggravated assault, but of rape and sexual battery, most appropriate for resolving Issue I but not Issue II. The supreme court has held that in aggravated assault cases, the State need not prove serious bodily injury: Mere "bodily injury" is sufficient so long as it was caused with "other means likely to produce death or serious bodily harm." Jackson v. State, 594 So.2d 20, 24 (Miss.1992). As in the case sub judice, the "other means" employed by Jackson were his fists. Therefore, if serious bodily injury need not be shown, then "serious" must not be an essential element of the offense. Accordingly, applying the majority's rationale, I find the amendment adding the *1099 word "serious" was one of form and not substance, as "serious" cannot be an element if it need not be proven.
¶ 39. Hawthorne was provided with the crime of which he was charged in Count II, aggravated assault, as well as the applicable Code section, Miss.Code Ann. § 97-3-7 (Rev.1994), plus the caption "Aggravated Assault." Miss.Code Ann. § 97-3-7 divides the crime of assault into simple assault in § 97-3-7(1) and aggravated assault in § 97-3-7(2). Section 97-3-7(2), which only concerns aggravated assaults, was fully cited in the body of the indictment. Thus, it is absolutely impossible that Hawthorne could not have known that he was charged with aggravated assault.
¶ 40. Furthermore, under this section, "serious" is not necessarily an element of aggravated assault if one looks to § 97-3-7(2)(b) which provides that only bodily injury need be proven if it was undertaken with the knowing purpose to produce death or serious bodily harm. I am satisfied that the State proved bodily injury to the victim in the case sub judice and that Hawthorne knowingly and purposely inflicted that injury on the victim with his fist in a manner that resulted in serious bodily injury to her. Therefore, in my view, the indictment was clearly sufficient under these facts to have Hawthorne answer the charge of aggravated assault. Therefore, I would affirm his conviction on Count II.[1]
DIAZ, J., Joins In Concurrence.
NOTES
[1] While I stand firm on my proposition that the aggravated assault conviction should be affirmed, the majority's resolution of this case is to reverse and remand, though no real guidance is given the court below as to what should be done on remand. Accordingly, as to the aggravated assault count, I would urge, pursuant to the rule pronounced in Love v. State, 211 Miss. 606, 612-13, 52 So.2d 470, 472 (1951), that the majority's remand be "without prejudice to the right of the state to bring against appellant a charge founded upon a proper indictment."