881 So.2d 878 (2004)
William SANDERSON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01626-COA.
Court of Appeals of Mississippi.
January 20, 2004.
Rehearing Denied May 18, 2004.
*879 Patsy Ann Bush, Hazlehurst, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS and GRIFFIS, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. William Sanderson was found guilty of aggravated assault and conspiracy to commit aggravated assault. He appeals arguing his indictment was fatally defective and that the verdict of the jury was against the overwhelming weight of the evidence. We find one error only. The charge of conspiracy was fatally defective. We reverse and order Sanderson discharged from the indictment for conspiracy, but affirm his conviction and sentence for aggravated assault.

STATEMENT OF FACTS
¶ 2. In December 2001, Peggy Lott was murdered. There were strong suspicions that Mrs. Lott's sixteen year old daughter Jamie had committed the crime, likely as a result of anger over her mother's efforts to prevent her from seeing and having sexual relations with Gary Mullins. The Lott girl was pregnant and the family believed that Mullins was the father. On the night of Mrs. Lott's funeral, several family members went to a gravel pit that was a known point of rendezvous for Jamie and Mullins. Among the group was the defendant, William Sanderson, Jamie's half-brother and a son of the murdered Mrs. Lott. There was testimony that at least some in this group had gone to the gravel pit wanting to impress upon Mullins an understanding of his obligations towards the baby that Jamie Lott was carrying. There was also testimony that some wanted to beat Mullins.
*880 ¶ 3. Someone in the group telephoned Mullins. Being informed that Jamie Lott wanted to see him at the gravel pit  she actually was not with the group  Mullins agreed to go there. Once he arrived, there was an altercation. Others were involved, but for purposes of this case, it is important that there was evidence that Sanderson approached Mullins, tried to hit him, and missed. Sanderson claimed that Mullins then stabbed him several times, causing him to fall to the ground. Sanderson then claims that he saw Mullins going after another person, so he pulled Mullins down on top of him. Sanderson then got up from the ground and asked one of the others to take him to the hospital. Sanderson stated that he did not stab Mullins. He also claims that he never conspired with anyone else to stab Mullins. He stated that at most, they discussed giving Mullins a physical beating.
¶ 4. Joseph Taylor was one of the other men involved in the fight. He testified that Sanderson wanted to speak to Mullins to make sure he was going to take care of Jamie and her child. Taylor told a police officer that he had stabbed Mullins. He later recanted and that Sanderson had asked him to take the blame until Sanderson was released from the hospital and could leave town.
¶ 5. Mullins testified that as soon as he got out of his car at the gravel pit, Sanderson stabbed him. He claims he was stabbed in the chest but was able to remove the knife himself. He and Sanderson began fighting over the knife, and he stabbed Sanderson a few times in the struggle. Mullins then ran into the woods to seek help at a house nearby. Mullins was later taken to the hospital where he underwent surgery to repair cuts to his lung and liver.
¶ 6. After a jury trial, Sanderson was found guilty of aggravated assault and conspiracy to commit aggravated assault. From this, he appeals.

DISCUSSION

1. The indictment
¶ 7. Sanderson claims that Count I of his indictment was fatally flawed. The existence of defects in indictments is a question of law. Peterson v. State, 671 So.2d 647, 652 (Miss.1996). An indictment must set forth all the elements of the criminal offense. Id. at 653.
¶ 8. Sanderson challenges the validity of both counts in the indictment. We examine the charge on aggravated assault first, and begin our review with the statute defining the crime.
(2) A person is guilty of aggravated assault if he
(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life....
(b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm....
Miss.Code Ann. § 97-3-7(2) (Rev.2000). The indictment stated:
Sanderson ... did wilfully, unlawfully, feloniously and purposely cause bodily injury to another, namely, one Gary Mullins, a human being, with a deadly weapon, to wit: a knife, by then and there stabbing the said Gary Mullins....
Sanderson claims that this indictment is flawed because it did not charge that he had caused serious bodily injury or that his actions were likely to produce death or serious bodily injury.
*881 ¶ 9. Sanderson argues that the word "serious" is an element of aggravated assault and it is essential that it be included in an indictment, citing Hawthorne v. State, 751 So.2d 1090, 1094 (Miss.Ct.App.1999). However, the Hawthorne prosecution was brought under subsection 97-3-7(2)(a), which requires either serious bodily injury or alternatively a non-serious injury that was inflicted "purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." That was not the charge against Sanderson. He was charged under subsection (2)(b) for causing bodily injury with a deadly weapon.
¶ 10. The crime of aggravated assault can be committed in more than one manner. The indictment here properly charged one of the means in which to commit the crime. The failure of the indictment to charge other means was appropriate. The cases that Sanderson cites are therefore irrelevant.
¶ 11. Sanderson also claims that the conspiracy count was not properly written because no victim of the conspiracy was named in the indictment:
COUNT TWO, and that on or about 22nd day of December, 2001, in Copiah County, ... WILLIAM SANDERSON AND JOSEPH D. TAYLOR did wilfully, unlawfully, feloniously and knowingly conspire and agree, each with the other, to wilfully unlawfully, feloniously and knowingly commit the crime of Aggravated Assault, contrary to and in violation of Sections 97-1-1 and 97-3-7 of the Mississippi Code of 1972....
¶ 12. The question becomes whether having a specific person as the intended victim of a conspiracy is necessary. There is one precedent cited to us in which a victim was named for the conspiracy. Farris v. State, 764 So.2d 411, 421 (Miss.2000). That such language was used in a particular indictment does not mean that it is required. We now must decide that issue.
¶ 13. A conspiracy is "a combination of two or more persons to accomplish an unlawful purpose." Brown v. State, 796 So.2d 223, 225 (Miss.2001). The State charged that Sanderson conspired with Taylor to commit an aggravated assault. The evidence showed that the two had a victim in mind, but the indictment did not name Mullins. He was named in Count I, but no one was named in Count II. A count of an indictment needs to be free-standing. Any implication that the victim intended in Count II must have been the same person as was actually named in Count I would not substitute for an obligation to name a victim of a conspiracy if such an obligation exists.
¶ 14. The State argues that the crime of conspiracy to commit aggravated assault is complete as soon as there is an agreement; no acts beyond the agreement are needed. From that, the State argues that no victim is needed nor must one be identified. That is partially true but not in the manner argued by the State. It is possible that two people could agree to assault the next person they see, or the next person of a certain race, or anyone whom they encounter who is a convenient target. Such a conspiracy might be based on a sick thrill of the act, or simply on seeking targets of opportunity. Yet even then, there is a planned victim but just no name to attach to the person.
¶ 15. We need not consider whether such an indictment would adequately charge a crime. Our question is one step removed. If the planning had not even identified a victim of a generic sort, then has the conspiracy yet been formed sufficiently to constitute a crime? To reiterate, we examine the issue in this way because *882 the indictment itself charged the crime in that way.
¶ 16. A conspiracy occurs as soon as there is an agreement, but there must be a definite enough agreement that, if nothing else, a meeting of the minds has occurred on what the conspirators are going to do. What in essence the State has argued is that a conspiracy to assault is committed when two people decide that someday, somewhere they will assault someone. That is not a plan; that is a desire. A crime is committed when two or more persons conspire to "commit a crime." Miss.Code Ann. § 97-1-1 (Rev.2000). "By its very nature conspiracy is a joint or group offense requiring a concert of free will. The union of the minds of at least two persons is a prerequisite to the commission of the offense...." Flanagan v. State, 605 So.2d 753, 757 (Miss.1992) (quoting Moore v. State, 290 So.2d 603, 604 (Miss.1974)). Only when contemplation is reduced to agreement is there a conspiracy. If the conspiracy is stopped even before any overt acts towards the crime occur, then the State's requirement to prove the agreement is an extra challenging one.
¶ 17. Difficulties can arise in defining the agreement even when a crime is committed. In one appeal, the Supreme Court reversed a conspiracy conviction because of the lack of evidence that the agreement went beyond assaulting the particular victim. All the conspirators had been convicted of murder because one of their number returned after the initial assault and killed the victim. Franklin v. State, 676 So.2d 287, 288 (Miss.1996). The evidence did not support that those who were not directly involved in the murder had agreed to its commission. Conspiracy requires "recognition on the part of the conspirators that they are entering into a common plan and knowingly intend to further its common purpose." Peoples v. State, 501 So.2d 424, 428 (Miss.1987).
¶ 18. These principles, as applied to the indictment against Sanderson, raise questions as to whether an agreement to commit a generic assault at an unknown time and place can be seen as a sufficient common purpose and meeting of the minds. One measure of whether a "union of the minds" exists for a conspiracy to commit a crime that was not committed, is to examine the question of whether a description of the crime in the indictment is definite enough for double jeopardy purposes. If not enough can be determined about the crime to prevent the same crime from being charged in a later indictment, then there is not sufficient definiteness.
If each charging instrument sets forth all of the elements of [the] offense charged, a court can determine by reference to those pleadings whether each crime charged contains an element not found in the other and therefore constitutes a separate offense for double jeopardy purposes.
4 WAYNE R. LAFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIM. PROC § 19.2(b) (2003).
¶ 19. This indictment only charged that on a certain date, Sanderson and Taylor conspired to commit an aggravated assault. There is no anchor to that conspiracy that would keep it from then being used in a later indictment. The date is not enough, as more than one conspiracy may logically be entered into on one day. If there was evidence that the same two people formed a conspiracy on the same day for an aggravated assault, but wished to commit it against someone other than Mullins, then the defect in the victimless indictment is immediately clear. It could not have been known under the victimless indictment whether it was the other conspiracy that the State intended to prove. Similarly, even without any evidence that *883 multiple conspiracies were entered into "on or about" December 22, 2001, which covers more than one day, the defect still exists.
¶ 20. The dissent notes that a uniform court rule's enumerated list of items for inclusion in the indictment does not refer to the name of the victim. URCCC 7.06. Yet the dissent has also noted that the indictment must contain "a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation"; the indictment then "shall also include" the items in the list. Id. Indeed, "an indictment must state the name of the victim of an offense where that is an element of the offense...." Burks v. State, 770 So.2d 960, 963 (Miss.2000), quoting Hughes v. State, 207 Miss. 594, 603, 42 So.2d 805, 807 (1949). Though what it means for the victim's name to be an element of the offense is not stated, we hold that in an assault case, the victim must be identified in some manner as an essential fact describing the crime.
¶ 21. The dissent in the alternative incorporates into the second count the name of the victim that is found in the first count of the indictment. In one case, an indictment was upheld in which there was an explicit incorporation in one count of the facts alleged in an earlier count. For example, one count provided that the "conduct described herein also constitutes the crime of Conspiracy," and then the elements of that offense were stated. Farris v. State, 764 So.2d 411, 421 (Miss.2000). The problem in our indictment is that there was no language or attempt to incorporate. Technical words or formal rules are not needed, but something must inform the defendant that one count is being incorporated into another. Each count, which by definition is a separate charge, must in some manner comply with Rule 7.06 by giving "the essential facts constituting the offense charged," else the defendant is not on notice nor can jeopardy properly operate.
¶ 22. The conspiracy count of the indictment is fatally defective. No crime was charged. Sanderson's conviction of conspiracy and his sentence of five years, which was to run concurrently with his twelve year sentence for the assault, are reversed.

2. Weight of evidence
¶ 23. Sanderson claims that the trial court erred when it denied his motion for a new trial. A new trial will not be ordered unless allowing the verdict to stand would constitute an "unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). The jury's verdict is given great deference. Burrell v. State, 613 So.2d 1186, 1191 (Miss.1993). Since we find that the conspiracy was not validly charged and have reversed as to it, we consider only the evidence on the assault.
¶ 24. Here, the jury heard testimony from Mullins and Sanderson relating to the aggravated assault. The jury must have determined that Mullins' account of the stabbing was correct. Allowing this verdict to stand does not create an "unconscionable injustice."
¶ 25. THE JUDGMENT OF THE COPIAH COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. THE JUDGMENT OF CONVICTION ON THE COUNT OF CONSPIRACY AND SENTENCE OF FIVE YEARS IS REVERSED AND THAT CHARGE IS *884 RENDERED. ALL COSTS ARE ASSESSED TO COPIAH COUNTY.
McMILLIN, C.J., KING, P.J., THOMAS, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR. LEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES AND MYERS, JJ.
LEE, J., concurring in part, dissenting in part.
¶ 26. While I concur with the majority's finding that Count I of aggravated assault in Sanderson's indictment was not faulty, I disagree with the majority's finding of a fatal flaw in Count II of Sanderson's indictment, which count concerned conspiracy. The existence of defects in an indictment is a question of law which we review de novo under a broad standard of review. Manuel v. State, 813 So.2d 762(¶ 3) (Miss.Ct.App.2002).
¶ 27. Uniform Circuit and County Court Rule 7.06 sets forth explicitly what an indictment shall contain:
The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:
1. The name of the accused;
2. The date on which the indictment was filed in court;
3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
4. The county and judicial district in which the indictment is brought;
5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;
6. The signature of the foreman of the grand jury issuing it; and
7. The words "against the peace and dignity of the state."
The court on motion of the defendant may strike from the indictment any surplusage, including unnecessary allegations or aliases.
URCCC 7.06. Nowhere in this rule is there a requirement that the name of the victim be included, as the majority holds. Rather, the indictment shall simply fully notify the defendant of the nature and cause of the accusation.
¶ 28. Sanderson's indictment states:
The Grand Jurors of the State of Mississippi ... upon their oaths present that WILLIAM SANDERSON AND JOSEPH D. TAYLOR, late of county aforesaid, on or about the 22nd day of December, 2001, in COPIAH County, Mississippi, and within the jurisdiction of this court, did wilfully, unlawfully, feloniously and purposely cause bodily injury to another, namely, one Gary Mullins, a human being, with a deadly weapon, to-wit: a knife, by then and there stabbing the said Gary Mullins, contrary to and in violation of Section 97-3-7 of the Mississippi Code of 1972, and against the peace and dignity of the State of Mississippi, this being count one of the indictment;
COUNT TWO
and that on or about the 22nd day of December, 2001, in Copiah County, Mississippi, and within the jurisdiction of this court, the said WILLIAM SANDERSON AND JOSEPH D. TAYLOR *885 did wilfully, unlawfully, feloniously and knowingly conspire and agree, each with the other, to wilfully, unlawfully, feloniously and knowingly commit the crime of Aggravated Assault, contrary to and in violation of Sections 97-1-1 and 97-3-7 of the Mississippi Code of 1972, and against the peace and dignity of the State of Mississippi.
¶ 29. The majority questions whether or not the wording in Count II is insufficient because it fails to name a specific person as the intended victim of the conspiracy, thus failing to apprize Sanderson of the charge. In Farris v. State, 764 So.2d 411(¶ 28) (Miss.2000), the supreme court stated, "So long as a fair reading of the indictment, taken as a whole, clearly describes the nature and cause of the charge against the accused, the indictment is legally sufficient." I disagree with the majority's argument that each count of the indictment, standing alone, must be sufficient. The Farris rule states that the indictment is to be read as a whole to determine whether the accused understands the nature of the charges against him. Here, simply because Gary Mullins's name was not repeated in Count II does not mean that Sanderson was not clearly aware that Mullins was the victim of the conspiracy, as Count I clearly indicated that the aggravated assault was directed towards Mullins and no one else.
¶ 30. The majority further claims that an indictment needs to be "free-standing," and we are not permitted to imply that the victim intended in Count II was the same victim named in Count I. However, in accordance with Uniform Circuit and County Court Rule 7.06 and the rule cited from Farris concerning reading the indictment as a whole, I believe Sanderson was fully informed. Perhaps some confusion would lie were another victim named in Count I in addition to Mullins; however, this was not the case.
¶ 31. While I recognize that it is not necessary for the defendant to challenge a fatally flawed indictment, nevertheless, Sanderson apparently had no difficulty understanding the basis for the conspiracy charge as he failed to object, and the State presented no surprises or other unknown victims during the trial. Again, the indictment as a whole fully apprized Sanderson of the crimes with which he was charged, and in accordance with the authority cited herein and pursuant to our broad standard of review, I would affirm the trial judge's findings in toto.
BRIDGES AND MYERS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.