I.
This is a subjectively disgusting case of the sexual battery of a young nine year old girl by a now 24 year old man. Most substantially proved was the Defendant's use of his penis to penetrate his victim anally. Less substantial but nevertheless credible evidence also suggests vaginal and oral penetration. Here as in other cases we are bound on our oaths that we suppress our visceral reactions to these facts and adjudicate this appeal by reference to rules of law objectively ascertained and applied — and that alone.
The acts involved here have been made unlawful by an enactment of the legislature and denominated sexual battery. Upon proof the legislature has authorized the imposition of substantial criminal penalties. As explained below, the evidence points to guilt with sufficient force that the jury's verdict of guilty and the judgment of conviction entered thereon are beyond our authority to disturb. We have reviewed one by one the several assignments of error and find none having merit. Because Cecil Henry Hines has been lawfully convicted and sentenced and not because we are repulsed by what he has done, we affirm.
 II. A.
The evidence taken in the light most favorable to the State[1] revealed the following facts. The nine-year old Prosecutrix, R.W., on May 23, 1982, spent the night with her father along with her seven-year old brother, and six-year old sister. R.W.'s parents were separated at the time. Her mother, who had custody of the children, was staying at a nearby hospital with her grandfather who was ill. R.W.'s father, T.W., allowed a couple of men to stay with him while they looked for jobs, one of whom was Cecil Henry Hines, Defendant below and Appellant here. On the night in question, all persons in the household stayed up late, and the men drank plenty of beer. R.W.'s brother got so drunk that the adults attempted to shower him, and he subsequently passed out on the couch in the living room in a drunken stupor.
The children were put to sleep in their father's bed. Sometime thereafter in the early morning hours of May 24, 1982, their father left the house for a while. During this time, Hines climbed into the bed shared by the children whereupon R.W. awoke. He had his trousers unzipped and moved up behind her. Hines picked R.W. *Page 388 
up and carried her into the kitchen. He then laid her on the floor, got over her, and removed her clothes. He remained dressed except for unzipped trousers. Hines then attempted to penetrate her vagina and did, in fact, penetrate her anus. He covered her mouth with his hand to keep her from screaming, and threatened her by telling her that if she told anyone he would hurt her even more.
After committing this first anal sexual battery of the child, Hines permitted her to go to the bathroom. Hines then followed R.W. into the bathroom and forced her to perform oral sex for him. Finally, he allowed her to go back to bed. Shortly after R.W. returned to bed, Hines demanded that she come into the living room to sit in his lap and watch television. Both Hines and R.W. were completely dressed by that time.
R.W.'s father returned by about 7:00 a.m. and took all the children on an errand. After returning to the house following the errand, R.W. asked her father to come upstairs so she could talk with him privately. R.W. told her father she had been raped by Hines but did not give all details. Her father took her to the hospital where she was examined by Dr. Bouldin Marley, Jr., a specialist in obstetrics and gynecology.
Dr. Marley testified that R.W. had bruises around her neck area, back and legs. The outside of the female genitalia had nondescript dirt and debris. Further pelvic examination revealed abrasions and redness outside the vagina but no tears or bleeding. R.W.'s hymen was intact, but a smear of the vaginal opening showed trace amounts of acid phosphatase not normally present in a nine-year-old girl's vagina. Acid phosphatase is one of the specific things found in the semen or sperm of a male's ejaculate. Examination of the rectal area revealed a red area with some abrasions and a "real hard bruise". There was abnormal presence of fecal matter in little pieces all over the perineal area mixed with the dirt and debris. Dr. Marley unequivocably stated, "In my opinion there was definite anal penetration."
Hines' defense to the charge was that he simply did not do it.
 B.
Hines was charged on July 7, 1982, via an indictment returned by the Coahoma County grand jury. Trial was set for February 7, 1983. At 8:20 on the morning of trial, Hines filed a demurrer to the indictment, urging essentially that the indictment was legally insufficient to charge a crime. This demurrer was overruled by the trial judge as not having been timely filed. The trial judge had apparently provided by prior order that all motions for this case were to have been filed prior to January 20, 1983.[2]
On February 8, 1983, the jury found Hines guilty of sexual battery. In due course the Circuit Court sentenced Hines to the custody of the Department of Corrections for a period of twenty-five (25) years.
Thereafter, Defendant Hines acting by and through his attorney, timely filed a motion for judgment of acquittal notwithstanding the verdict of the jury, or, in the alternative, for a new trial. On February 16, 1983, the Circuit Court entered its order overruling these alternative motions. Hines now appeals to this Court.
 III. A.
Hines' principal assignment of error regards the indictment. First and foremost, Hines complains that the trial judge erred when he rejected Hines' demurrer on grounds it had not been filed by a pre-trial deadline fixed by the court. Second, and assuming that the merits of the demurrer be reached, Hines argues that the indictment is far too general in its charging language to provide him with fair notice of the charges against him. *Page 389 
 1.
On January 6, 1983, the trial judge entered an order which related primarily to discovery matters and then provided
 VII. All other motions shall be made as required by law and/or within a reasonable time. It will be in the discretion of the Court whether to grant or refuse any motion not timely made.
Hines' counsel filed his demurrer to the indictment at 8:20 a.m. on February 7, 1983, some forty minutes prior to the scheduled beginning of the trial. The demurrer was overruled solely on the ground "it was not timely filed".
In announcing his ruling, the trial judge stated:
 BY THE COURT: I don't have it with me, Mr. Pearson [defense counsel]. I notice that the defendant has filed a demurrer to the indictment. That demurrer to the indictment was filed at 8:20 today, being the day scheduled for trial. This trial was scheduled on the opening day of court, on January 10, 1983. At that time the Court directed that motions be filed in a timely manner, and scheduled January 20, for hearing of all motions in criminal cases. This indictment is a carryover from the last term. There is no reason that any question that could be raised by a demurrer could not and should not have been brought prior to that term, and certainly it is not timely filed when filed on the date of the trial. That demurrer will be overruled.
We find nothing in the record (besides these comments by the trial judge) providing a January 20, 1983 cutoff for the filing of demurrers or motions. On the other hand, there is nothing in the record or in the arguments presented on appeal suggesting that defense counsel was surprised by the trial judge's reliance upon the January 20 motions deadline.
We regard the fixing of orderly time limitations within which various actions must be taken by the parties well within the rule-making power of any court. See Moran v. Necaise,437 So.2d 1222, 1225-1227 (Miss. 1983); Scott v. State, 310 So.2d 703, 704-05 (Miss. 1975); Newell v. State, 308 So.2d 71, 75-78 (Miss. 1975); Southern Pacific Lumber Company v. Reynolds,206 So.2d 334, 335 (Miss. 1968). Circuit courts are among those possessing this authority. Scott v. State, 310 So.2d 703, 705 (Miss. 1975).
We have heretofore provided by general rule that in criminal proceedings in our circuit courts:
 All pre-trial motions or other pleadings must be brought to the attention of the court at a time designated by the court, but in any event prior to the date set for trial, or will be considered withdrawn. [Emphasis added]
 Rule 4.02, Unif.Crim.R.Cir.Ct.Prac.
The rules further provide for an omnibus hearing "at least three days prior to trial" at which demurrers should be presented. Rule 4.09(4), Unif.Crim.R.Cir.Ct.Prac.
That a statute may allow the filing of demurrers to an indictment at any time "before the jury shall be impaneled" avails Hines nothing. The circuit judge clearly had authority to set a reasonable pre-trial cutoff date for the filing of demurrers, motions, etc., consistent with the Uniform Criminal Rules of Circuit Court Practice, and to enforce same. In the case of a trial scheduled for February 7, a motions cutoff date of the immediately preceding January 20 would ordinarily be reasonable.
We would stop here if we could find in the record any order or directive of the trial judge setting a January 20 cutoff. We have searched the record and such is not to be found. Because of this, and because Hines has received a rather severe twenty-five year sentence and has made his attack on the indictment his principal assignment of error, we think it appropriate to decide this point on its merits.
 2.
A consideration of the point on its merits takes us to the indictment which is labeled "SEXUAL BATTERY MCA 97-3-95(a). The indictment charges that Cecil Henry Hines *Page 390 
 on or about the 24th day of May, . . . . 1982, in the County (Coahoma) and State (Mississippi) aforesaid, and within the jurisdiction of this Court, did unlawfully, wilfully and feloniously engage in sexual penetration of . . . (R.W.), a female age-9, without the consent of the said . . . (R.W.), and contrary to the form of the statute in such cases made and provided, . . . .
The language "contrary to the form of the statute" may reasonably be read as referring to that typed in at the top of the indictment "MCA 97-3-95(a)".
The statute to which reference is made in the indictment provides:
 § 97-3-95. Sexual battery.
 A person is guilty of sexual battery if he or she engages in sexual penetration with:
 (a) Another person without his or her consent;
The term "sexual penetration" is employed in both Section 97-3-95
and in the indictment. The term has been statutorily defined.
 § 97-3-97. Sexual battery-definitions.
 For purposes of sections 97-3-95 through 97-3-103 the following words shall have the meaning ascribed herein unless the context otherwise requires:
 (a) "Sexual penetration" includes cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings, of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body.
Hines argues in effect that the indictment should have contained a bill of particulars. He complains that the indictment fails to specify which organ of Hines' body was said to have penetrated which orifice of R.W.'s. Hines seeks to drive home his point by invoking his constitutional right to double jeopardy protection once this trial has been concluded. See Hamilton v.State, 197 So.2d 469, 474 (Miss. 1967). If Hines' organ(s) and R.W.'s orifice(s) is (are) not identified, he could be subject to repeated retrials with the state each time charging a different organ and/or orifice.
On close examination, the point won't wash. Quite likely any acquittal under the indictment at issue would have afforded Hines collateral estoppel protection in the event of a second trial.Sanders v. State, 429 So.2d 245 (Miss. 1983). Moreover, it would seem apparent that the broader the charging language of the indictment, the broader the double jeopardy protections afforded. By reference to the charging language of this indictment, an acquittal would no doubt have afforded Hines a double jeopardy shield against any subsequent prosecution for any penetration of R.W. "on or about May 24, 1982", period. Seen in this light Hines' double jeopardy attack on the indictment results only in his being hoist upon his own petard.
In the final analysis, our inquiry is whether the indictment contains
 a plain, concise and definite written statement of the essential facts constituting the offense charged and . . . fully (notifies) the defendant of the nature and cause of the accusation against him.
 Rule 2.05, Unif.Crim.R.Cir.Ct.Prac.
We hold that an indictment which charges sexual penetration of an identified victim on a specified date in a specified geographical location, including the charge that the acts were committed "unlawfully, wilfully and feloniously" and a typed label at the top reading "SEXUAL BATTERY MCA 97-3-95(a)" charges the accused with the criminal offense of sexual battery with such force that his demurrer will be unavailing. See Harden v. State,465 So.2d 321, 324 (Miss. 1985); Jones v. State, 461 So.2d 686, 693-94 (Miss. 1984); Thames v. State, 454 So.2d 486, 487 (Miss. 1984);Henderson v. State, 445 So.2d 1364, 1367-68 (Miss. 1984). The assignment of error is denied.
 B.
Hines next assigns as error said-to-have-been-unfair restrictions placed upon his attorney's efforts to cross-examine the Prosecutrix, R.W. The only restriction *Page 391 
complained of is that defense counsel was not permitted to elicit from R.W. an answer to the question "Have you ever seen a man and a lady do that before?", referring to the act of sexual intercourse. Objection to this question was based on the ground that "It is irrelevant, sir, and has nothing to do with this case". The objection was sustained and, in the context of the charge and facts of this case, correctly so. In any event, the Trial Judge was well within his sound discretion to sustain the objection. See Shearer v. State, 423 So.2d 824, 826 (Miss. 1982); Shanklin v. State, 290 So.2d 625, 628 (Miss. 1974);Dozier v. State, 257 So.2d 857, 859 (Miss. 1972).
The assignment of error is without merit and is denied.
 C.
Hines alleges he was restricted in his cross-examination of R.W.'s father. Hines has not favored us with identification of any issue or factor pertaining to R.W.'s father's testimony that he did not get before the jury. Our review of the testimony reveals that those objections sustained during this cross-examination were predicated on repetitiveness. Our review of the testimony also reveals that the questions were in fact repetitive and repetitiously so.
Put another way, the trial judge let defense counsel ask the same question more often than he should have. The trial judge's handling of this aspect of the trial exhibited patience, not error.
 D.
Hines next assigns as error that the Trial Judge erred in permitting cross-examination of him regarding a hair transfer from Prosecutrix to him. This cross-examination occurred against the backdrop of Hines' profession of affection for the nine year old Prosecutrix which had been manifested by his seating the Prosecutrix in his lap. These facts are susceptible of two interpretations and constituted a fair target for the State's cross-examination.
The trial judge was well within his authority when he permitted this cross-examination. Shanklin v. State, 290 So.2d 625, 627-28 (Miss. 1974); Rush v. State, 254 Miss. 641,182 So.2d 214, 219-20 (1966). No right secured to Hines was violated thereby. The assignment of error is denied.
 E.
Hines next excepts to the trial judge's having given, at the request of the State, the following instruction.
 INSTRUCTION NO. 6514-S-1
 The Defendant, Cecil Henry Hines, is charged by an indictment with the crime of Sexual Battery for having engaged in anal sexual penetration of . . . [R.W.] without her consent.
 If you find from the evidence in this case beyond a reasonable doubt:
 1. That the Defendant engaged in anal sexual penetration with . . . [R.W.]; and
 2. That he did so without her consent; then you shall find the Defendant guilty as charged.
 If the State has failed to prove one or more of the above elements beyond a reasonable doubt, then you shall find the Defendant not guilty.
The supposed defect in the instruction is that it limits the crime charged from the general "sexual penetration" of the indictment to a more specific "anal sexual penetration", yet still allows the jury to return a verdict of "guilty as charged". Perhaps this is a technical point that should have been tidied up. Common sense suggests, however, that this narrowed instruction could only have operated to Hines' benefit.
It is sufficient unto the day to note that defense counsel made no utterance remotely resembling an objection when the instruction was tendered. The point having thus been waived, Rule 42, Miss.Sup. Ct.R., the assignment of error is denied. *Page 392 
 F.
Hines next assigns as error the trial judge's "allowing" the State to present final argument to the jury regarding vaginal or oral penetration. We place "allowing" in quotation marks because our reading of the record fails to disclose when or how the trial judge was asked to disallow the argument. The point has been waived, Rule 6, Miss.Sup.Ct.R., and the assignment of error is denied.
 G.
At oral argument defense counsel earnestly and ably urged that the jury verdict below was substantially unjust. Our review of the record convinces us otherwise. It suffices only to note that R.W., the Prosecutrix, testified unequivocally that Hines had anally penetrated her with his penis. Dr. Bouldin Marley, Jr., on the basis of his examination of R.W., gave his opinion that "there was definitely some anal penetration".
Testing the evidence under our familiar standards, see May v.State, 460 So.2d 778, 781 (Miss. 1984), we hold that there is in this record evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, fair-minded jurors in the exercise of impartial judgment might conclude that Hines was guilty. Accordingly, the Circuit Court correctly denied Hines' request for a peremptory instruction and overruled his subsequent motion for j.n.o.v. See Pharr v.State, 465 So.2d 294, 301 (Miss. 1984); Williams v. State,463 So.2d 1064, 1067-1068 (Miss. 1985).
By the same token, and by reference to the evidence summarized in Section II above, we may say with confidence that the Circuit Court was well within its discretion when it overruled Hines' motion for a new trial insofar as that motion challenges the weight of the evidence. See Pharr v. State, 465 So.2d at 301-302; Williams v. State, 463 So.2d at 1068.
The judgment of conviction of Cecil Henry Hines of the crime of sexual battery, Miss. Code Ann. § 97-3-95 (Supp. 1984), and the sentence of twenty-five (25) years imprisonment imposed thereupon, Miss. Code Ann. § 97-3-101 (Supp. 1984) is accordingly affirmed.
AFFIRMED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
[1] See Pearson v. State, 428 So.2d 1361, 1362 (Miss. 1983).
[2] We have searched the record in vain for a copy of an order providing a cutoff date for the filing and hearing of motions.