# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CP-00647-COA

**DWIGHT NELSON**                                                      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

DATE OF JUDGMENT:              02/17/2023
TRIAL JUDGE:                  HON. STANLEY ALEX SOREY
COURT FROM WHICH APPEALED:    SIMPSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       DWIGHT NELSON (PRO SE)
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:           CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                  AFFIRMED - 05/27/2025
MOTION FOR REHEARING FILED:

      **EN BANC.**

      **WILSON, P.J., FOR THE COURT:**

¶1.    Following a jury trial, Dwight Nelson was convicted of sexual battery and fondling. The trial court sentenced him to consecutive terms of life imprisonment and ten years in the custody of the Department of Corrections, and this Court affirmed his convictions on direct appeal. The Mississippi Supreme Court later granted Nelson leave to file a motion for post-conviction relief (PCR) in the trial court raising issues related to an alleged defect in his indictment, the sufficiency of the evidence, and ineffective assistance of counsel. After a hearing, the trial court denied Nelson's motion, and Nelson filed a notice of appeal. For the reasons discussed below, we find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In 2014, ten-year-old J.S. told her mother, Courtney Sumrell, that Nelson, who is Sumrell's uncle, had raped her months earlier. Nelson lived next door to J.S. and Sumrell at the time. Sumrell reported J.S.'s allegations to law enforcement, and J.S. was referred to the Children's Advocacy Center for a forensic interview. During her forensic interview, which was played for the jury at trial, J.S. stated that the first time Nelson abused her, he was "playing and joking around" and tickling her, and "[t]hen he picked [her] up and took [her] to his room and pulled [her] pants down and pulled [his] pants down." Nelson then "put his private on [her] private parts." During later incidents, Nelson would put "grease" on his penis before penetrating her. Once, Nelson tried to put his penis in J.S.'s mouth, but she would not open her mouth. Another time, Nelson "tried to kiss" J.S., but she "wouldn't let him do it." At trial, J.S. testified that Nelson sexually abused her "a lot" from the time she was six or seven years old until she was ten years old. The last incident occurred in late 2013. The jury found Nelson guilty of sexual battery and fondling, and the court sentenced him to consecutive terms of life imprisonment and ten years in the custody of the Department of Corrections. This Court affirmed Nelson's convictions on appeal. *Nelson v. State*, 222 So. 3d 318, 321 (¶1) (Miss. Ct. App. 2017).

¶3. Nelson subsequently filed a pro se application in the Mississippi Supreme Court for leave to file a PCR motion in the trial court. Nelson's application raised four issues:

    (1)     Whether the indictment failed to allege sufficient facts to put Nelson on
            notice of the charges against him and to protect him from double
            jeopardy . . . .

(2) Whether both of Nelson's counts should merge [because] both counts stem from the same conduct in violation of both federal and state constitutional rights against double jeopardy.

(3) Whether the jury instructions caused a variance and/or constructively amend[ed] the indictment . . . .

(4) Whether [his] trial counsel was ineffective . . . .

¶4. A panel of the Supreme Court ordered the State to file a response addressing three issues, which the panel restated as follows:

(1) Whether Nelson's indictment failed to contain sufficient facts to fairly inform Nelson of the charges against him, and whether there were sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense.

(2) Whether there was sufficient evidence to support Nelson's gratification of lust conviction, particularly whether the State established the incidents of gratification of lust occurred in 2013 as claimed in the indictment.

(3) Whether Nelson's trial counsel and appellate counsel were ineffective for failing to challenge the lack of facts to support Nelson's indictment.

*Nelson v. State*, No. 2020-M-00370 (Miss. Sept. 9, 2020) (panel order). After the State filed its response, the Supreme Court, en banc, granted Nelson's application to proceed in the trial court. *Nelson v. State*, No. 2020-M-00370 (Miss. June 7, 2021) (en banc order). The en banc order did not identify the specific issues that Nelson could pursue in the trial court.

¶5. Nelson retained counsel to file his PCR motion in the trial court, and counsel filed a motion that raised the four issues included in the original application Nelson filed in the Supreme Court—rather than the three issues listed in the Supreme Court's subsequent panel

order.  The State filed a response, and the court set the motion for a hearing.  At the start of the hearing, Nelson's attorney stated that the case had been "remanded back on three issues," which she described in terms nearly identical to the Supreme Court's panel order.  Counsel stated that the "jury instruction issue" raised in Nelson's original application for leave "ha[d] not been remanded back for purposes of this [PCR] hearing."  However, Nelson's attorney then proceeded to orally argue the first, second, and fourth issues raised in Nelson's *original* application for leave.  Nelson did not call any witnesses or offer any evidence.  The trial court denied Nelson's PCR motion, and Nelson filed a notice of appeal.

¶6.     On appeal, Nelson is again pro se.  Nelson argues that, although not expressly stated, the en banc Supreme Court implicitly granted him leave to proceed on the three issues listed in the Court's prior panel order.  Therefore, Nelson argues that his PCR attorney "should not have submitted" a PCR motion that asserted the four issues raised in his original application for leave.  Rather, the motion should have addressed the three issues listed in the Supreme Court's panel order.  And Nelson argues that the trial court "abused [its] discretion" and "plainly erred" by accepting the PCR motion filed by counsel.  Nelson's appellate brief then addresses the three issues listed in the Supreme Court's panel order.

¶7.     Assuming arguendo that Nelson's PCR attorney raised issues that the Supreme Court had not granted him leave to pursue, Nelson was not prejudiced by counsel's assertion of additional issues.  Therefore, we bypass Nelson's first issue and address the merits of his arguments regarding the three issues raised in the Supreme Court's panel order.

4

## ANALYSIS

### I.     Sufficiency of the Indictment

¶8.     Nelson argues that his indictment was defective because it (1) alleged that his crimes occurred "during and about 2013" without providing specific dates; (2) did not state the victim's name; and (3) only vaguely and ambiguously alleged the elements of the offenses. We address these arguments in turn.

¶9.     In his direct appeal, Nelson argued that his indictment was defective because it failed to allege the specific dates of the offenses. This Court specifically rejected that argument. *Nelson*, 222 So. 3d at 323 (¶¶11-13). Under the Uniform Post-Conviction Collateral Relief Act, "[t]he doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial *and on direct appeal*." Miss. Code Ann. § 99-39-21(3) (Rev. 2020) (emphasis added). Accordingly, issues that the Supreme Court or this Court "considered and rejected" on direct appeal may not be relitigated in PCR proceedings. *Jordan v. State*, 213 So. 3d 40, 42 (¶8) (Miss. 2016); *Skinner v. State*, 354 So. 3d 327, 334 (¶15) (Miss. Ct. App. 2022), *cert. denied*, 354 So. 3d 307 (Miss. 2023).

¶10.     Regarding the omission of the victim's name from the indictment, the trial court "recognize[d] that the better practice would be to use initials, or a first name, or something," but the court found that "Nelson was aware of his victim" and that there was no "potential chance for a double jeopardy issue ever coming up because this victim was named throughout the trial and, in fact, even [identified by her initials and relationship to Nelson]

in [this Court's] opinion" on direct appeal.

¶11.    We agree with the trial court's conclusion. The record from Nelson's direct appeal shows that before he was indicted, he was arrested and granted bail subject to "a no[-]contact order" "with the alleged victim." After he was indicted, Nelson filed a motion to reduce bail in which he emphasized that he had "complied with" that no-contact order. Thus, Nelson clearly knew the identity of the alleged victim *even before he was indicted*. The victim was also identified in a pretrial motion and jury instructions, and nothing suggests that there was ever any confusion or uncertainty about her identity. Therefore, while we agree with the trial court that an indictment charging sexual battery and fondling should identify the victim in some manner, we also conclude that the omission in this case was, at most, harmless error. *See Quang Thanh Tran v. State*, 962 So. 2d 1237, 1247 (¶39) (Miss. 2007) (holding that a money laundering indictment was defective because it failed to allege that the subject funds were proceeds of a specific "unlawful activity," but holding the error was harmless because a pre-indictment filing in a related civil forfeiture action "clearly informed" the defendant that the State "deemed this money the proceeds of drug trafficking activities").

¶12.    Next, Nelson argues that his indictment's descriptions of the statutory elements of his offenses were impermissibly vague and ambiguous. Count I of the indictment tracked the language of the sexual battery statute, alleging that Nelson "engage[d] in sexual penetration with a female child under the age of fourteen." Miss. Code Ann. § 97-3-65(1)(b) (Rev. 2014). Similarly, Count II tracked the fondling statute, alleging that Nelson handled,

touched, or rubbed a female child under the age of sixteen for the purpose of gratifying his lust. *See* Miss. Code Ann. § 97-5-23(1) (Rev. 2014). Nonetheless, Nelson argues that Count I was deficient because it did not identify the specific type of penetration and that Count II was deficient because it did not describe the precise nature of the touching.

¶13. These arguments are also without merit. "Generally, an indictment tracking the language of the criminal statute is sufficient to inform the defendant of the charged crime." *Cotten v. State*, 202 So. 3d 216, 219 (¶7) (Miss. Ct. App. 2016). This case is no exception to the general rule. As this Court has explained, "the particular method of achieving sexual penetration is not an element of the offense of sexual battery." *Metcalf v. State*, 265 So. 3d 1242, 1249 (¶29) (Miss. Ct. App. 2019) (quoting *Young v. State*, 194 So. 3d 904, 910 (¶21) (Miss. Ct. App. 2016)). Rather, a defendant may be convicted of any of the various types of "sexual penetration" listed in the statute. *See* Miss. Code Ann. § 97-3-97(a) (Rev. 2020). Therefore, "the Mississippi Supreme Court and this Court have held[ that] an indictment for sexual battery may allege 'sexual penetration' generally *and need not identify the specific nature of the penetration*." *Thompson v. State*, 344 So. 3d 299, 302 (¶8) (Miss. Ct. App. 2022) (emphasis added) (collecting cases). The same is true of the crime of fondling. An indictment for fondling need only allege that the defendant touched the victim for lustful purposes—and need not describe the specific "method" of touching or body parts involved. *Lepard v. State*, 394 So. 3d 1061, 1070 (¶34) (Miss. Ct. App. 2024). Therefore, Nelson's indictment adequately alleged the essential elements of the indicted offenses.

7

¶14. Lastly, the Supreme Court's panel order noted that an indictment must allege "sufficient facts to enable [the defendant] to plead double jeopardy in the event of a future prosecution for the same offense." *Gilmer v. State*, 955 So. 2d 829, 836-37 (¶34) (Miss. 2007) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). For the reasons discussed above, we have already concluded that any error in failing to identify the victim's name was harmless because her identity is clear from the record, and we have concluded that Nelson's indictment was otherwise legally sufficient. "Moreover," our Supreme Court has stated that "it would seem apparent that the broader the charging language of the indictment, the broader the double jeopardy protections afforded." *Hines v. State*, 472 So. 2d 386, 390 (Miss. 1985). Therefore, Nelson's indictment and subsequent convictions of sexual battery and fondling of J.S. "during and about 2013," as charged in Counts I and II, will "no doubt . . . afford[] [him] a double jeopardy shield against any subsequent prosecution for any penetration" or fondling of J.S. in or about that same year. *Id.* Accordingly, Nelson's indictment is also adequate to afford him double jeopardy protection from future prosecution. And, for all the above reasons, the indictment is not fatally defective.

## II.     Sufficiency of the Evidence

¶15. Nelson next challenges the sufficiency of the evidence to support his fondling conviction. He argues, in the language of the Supreme Court's panel order, that the State failed to "establish[] the incidents of gratification of lust occurred in 2013 as claimed in the

indictment."[1] Nelson previously challenged the sufficiency of the evidence on direct appeal, and we held that the evidence was legally sufficient to sustain Nelson's convictions of both counts and that the trial court did not err by denying his motion for judgment notwithstanding the verdict. *Nelson*, 222 So. 3d at 325-26 (¶¶27-28). As explained above, because this Court has already "considered and rejected" this argument on direct appeal, it is barred by res judicata and cannot be relitigated in a PCR proceeding. Miss. Code Ann. § 99-39-21(3); *Jordan*, 213 So. 3d at 42 (¶8); *Skinner*, 354 So. 3d at 334 (¶15). Nonetheless, the Supreme Court's panel order seemingly raised this issue sua sponte, and the Court's subsequent en banc order did not specifically state whether Nelson could raise the issue in the trial court. Therefore, in an abundance of caution, we will address the issue on the merits.

¶16.    Although J.S.'s testimony and statements to the forensic interviewer were somewhat vague on details and dates, the evidence was sufficient to support Nelson's convictions of both sexual battery and fondling. First, J.S. unequivocally testified and previously stated in her forensic interview that Nelson vaginally penetrated her in late 2013. Such evidence is sufficient to sustain Nelson's conviction of sexual battery. *See Miley v. State*, 935 So. 2d

---

[1] Nelson repeatedly argues that the Supreme Court found that the issues listed in the panel order were all "<u>meritorious</u>." This is a misunderstanding of the panel order. The panel only stated that these issues "merited" "*a response*" by the State. (Emphasis added). Moreover, the Supreme Court did not grant Nelson any relief but only allowed him to file a PCR motion in the trial court. *See* Miss. Code Ann. § 99-39-27(7) (Rev. 2020) (providing that if an application for leave to file a PCR motion is not denied, the Supreme Court may either "grant . . . any or all relief requested in" the proposed PCR motion or allow the motion to be filed in the trial court for further proceedings).

998, 1001 (¶10) (Miss. 2006) ("[T]he unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence.").

¶17. In addition, the jury heard J.S.'s forensic interview in which she stated that at the conclusion of the same 2013 incident, Nelson used "a rag" to "wipe" her. The jury could have found that this touching constituted fondling under the statute. *See* Miss. Code Ann. § 97-5-23(1).

¶18. "Under Mississippi law, sexual battery of a child and [fondling] are separate and distinct criminal offenses. While sexual battery of a child requires some sort of penetration," fondling "does not." *Faulkner v. State*, 109 So. 3d 142, 147 (¶20) (Miss. Ct. App. 2013). Therefore, when "sufficient evidence exists to support separate and distinct acts of fondling and sexual battery, separate indictable charges can properly stand without implicating jeopardy issues." *Id.* at 148 (¶21). "This is so even if the criminal acts are closely connected or based on a common nucleus of fact . . . ." *Id.* Thus, in *Mosby v. State*, 134 So. 3d 850, 856-57 (¶25) (Miss. Ct. App. 2014), this Court held that the defendant was properly convicted of both fondling and sexual battery based on evidence that during a single incident, he fondled the victim's breast and then digitally penetrated her vagina. Likewise, in this case, J.S.'s statement that Nelson vaginally penetrated her and then subsequently wiped her with a rag were sufficient to support both convictions.

¶19. We also note that J.S. testified that Nelson sexually abused her "a lot" of times, and

she described other incidents when Nelson tried to kiss her and tried to put his penis in her mouth. Such acts by Nelson clearly constitute fondling. Although J.S. could not recall the dates of these incidents, "the [Mississippi] [S]upreme [C]ourt has explained that 'an allegation as to the time of the offense is not an essential element of the offense charged in the indictment and, within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient.'" *Garlington v. State*, 349 So. 3d 782, 797 (¶41) (Miss. Ct. App. 2022) (quoting *Daniels v. State*, 742 So. 2d 1140, 1143 (¶10) (Miss. 1999), *overruled on other grounds by Wilson v. State*, 194 So. 3d 855 (Miss. 2016)). There is no statute of limitations for the crime of fondling. Miss. Code Ann. § 99-1-5(1)(a) (Rev. 2020). Based on J.S.'s testimony and forensic interview, the jury could have found that Nelson committed additional acts of fondling within a reasonable time of the time alleged in the indictment, i.e., "during and about 2013." Accordingly, we reaffirm our holding on direct appeal that the evidence was sufficient to convict Nelson of both counts. *Nelson*, 222 So. 3d at 325-26 (¶¶27-28).

### III.    Ineffective Assistance of Counsel

¶20.    "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must show *both* (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—*and* (2) that he was prejudiced as a result—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant "bears the burden of proving both prongs of *Strickland*." *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. Ct. App. 2008). "If either prong is not met, the claim fails." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶21. Nelson argues that his attorneys at trial and on direct appeal "were ineffective for failing to challenge the lack of facts to support [his] indictment." However, we have already held that any defect in Nelson's indictment was harmless and that the State presented sufficient evidence to support his convictions. It follows that Nelson was not prejudiced because his prior attorneys did not challenge his indictment or make different arguments challenging the legal sufficiency of the evidence. As this Court has stated, "failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Kirby v. State*, 379 So. 3d 915, 923 (¶14) (Miss. Ct. App. 2024) (quoting *Carruthers v. State*, 348 So. 3d 1042, 1049 (¶15) (Miss. Ct. App. 2022)). Accordingly, this issue is also without merit.

## CONCLUSION

¶22. The circuit court did not err by denying Nelson's PCR motion.

¶23. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.**